LAW OFFICES

## PHILLIP PAUL WEIDNER AND ASSOCIATES
A PROFESSIONAL CORPORATION
943 W. 6TH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501

E-Mail:
phillipweidner@weidnerjustice.com

907/276-1200
FAX 907/278-6571

## APPEAL AND PROTEST
## RE: DECISION DATED OCTOBER 8, 2018[1]

January 25, 2019

Regence BlueShield                      *Via Certified Ma*
P.O. Box 2998
Tacoma, WA 98401

**Certified Article Number**

9414 7266 9904 2086 3538 39

**SENDERS RECORD**

Regence BlueShield                      *Via Certified Mail*
ATTN: ASO Correspondence, Intake and Appeals
P.O. Box 2998
Tacoma, WA 98401-2998

**Certified Article Number**

9414 7266 9904 2086 3538 46

**SENDERS RECORD**

Coffman Engineers, Inc.                 *Via Certified Mail*
800 F Street
Anchorage, AK 99501

**Certified Article Number**

9414 7266 9904 2086 3538 53

**SENDERS RECORD**

### Re: Peter D. Hewko, Member ID: 090077277

Dear Addressees:

This law firm has been contacted by Peter D. Hewko regarding certain actions by you and/or by Coffman Engineers with respect to medical benefits he is entitled to as an insured under the Coffman Engineers Inc., Regence Blue Shield Plan.

On or about June 15, 2016, Peter sustained an acute ischemic left middle cerebral artery stroke. He was treated at Alaska Regional Hospital and was found to have a left internal carotid artery occlusion. He was transferred to Providence Medical Center on July 1, 2016 for acute rehabilitation. He was discharged on July 29, 2016 to his home in Eagle River, Alaska, where he resided with his mother who was his 24/7 caregiver. At the time that Peter was discharged to home, he was in a fragile health state, including suffering aphasia, dysphagia, right hemiparesis, and cerebral edema.

---

[1] Exhibit C.

Peter's health insurance plan provides benefits for neurodevelopmental therapy to restore or improve function, including care in a skilled nursing facility plus rehabilitative in-patient care.

When Peter was admitted to the hospital for his stroke, his family was put in touch with a "nurse case manager," who, along with Mr. Gardner and Mr. Veelman, led them to understand that she would facilitate Peter receiving all benefits to which he was entitled under his plan. Peter's family did not receive a copy of the relevant health insurance plan and was totally reliant on the "nurse case manager" to inform them of his benefits.

Peter's family (and apparently the staff at Alaska Regional Hospital and Providence Medical Center) was told, incorrectly, that Peter's benefits under his health insurance plan were limited to 30 days in-patient care and 25 days annual, out-patient care. He was discharged to home on about July 29, 2016 despite his very fragile state of health and desperate need for continued inpatient care. He was discharged at the direction of Regence and/or its agents, and Providence Hospital complied with the direction even though Peter was entitled to continued in-patient care and was in desperate need of it. This is deliberate interference with the doctor/patient relationship and a breach of your obligations as to your insured. In that regard, even out-patient/home health services from Rehab Without Walls was denied.

Moreover, it appears that the decision to discharge Peter to home came as a result of Regence and/or Coffman Engineers misinforming Providence regarding Peter's options for further care and leaving both Providence and Peter's family with the incorrect understanding concerning his health insurance benefits. Thus, Peter was discharged to home not based on medical appropriateness, but based on the financial interests of Regence and Coffman Engineers and through misinformation.

In approximately April 2017, almost one year after Peter's stroke, Jane Hewko, Peter's mother, learned that Peter had neurodevelopmental therapy benefits under his plan and that inpatient benefits were not limited. Peter's family was shocked, as the nurse case manager had never told them while Peter was a patient in the hospitals of the existence of this benefit. Because they did not know of the benefit, Peter's family was forced to assume total responsibility for caring for Peter at home. Peter's condition was such that, even in April 2017, and yet in October 2018, Peter was in need of in-patient neurodevelopmental therapy.

On July 26, 2017, Jane Hewko, Peter's mother and at-home care provider, wrote to Regence BlueShield regarding her discovery that Peter had been denied insurance benefits to which he was entitled, and his pressing need for those benefits. Her

correspondence constituted a timely "appeal" of Regence's denial of benefits. See, **Exhibit A.**

Instead of processing the correspondence as an "appeal" and taking the matter seriously, Regence transmitted a letter to Jane Hewko on or about August 31, 2017, "thank[ing]" Jane for her "personal letter explaining Peter's condition and symptoms, and for taking the time to communicate [her] concerns to us." See, **Exhibit B.**

Regence appears to deny that it and/or the case manager misinformed the Hewkos regarding Peter's benefits, stating, "According to the our records [sic], benefit information regarding neurodevelopmental therapy as well as outpatient rehabilitation services was discussed between you and a Regence Case Manager on August 17, 2016, October 3, 2016 and March 28, 2017." **Exhibit B.** Regence's account is **not true**. The benefit information communicated on those dates at most mentioned inpatient therapy, but was in no way "discussed." Moreover, even Regence's position that the Hewkos were provided certain information well after Peter was discharged to home (which as noted, is not true), actually demonstrates that Regence deliberately kept the Hewkos in the dark in order to force Peter to be discharged from Providence in July 2016 while in a medically fragile state.

The remainder of Regence's letter to Jane Hewko avoids the issue raised by her in her appeal, which is that Regence kept necessary information regarding Peter's health insurance benefits from him and his family, kept that information from the relevant staff members at Providence Medical Center, and as a result, Peter was discharged to home while in a medically fragile state. Regence's handling of the appeal was in bad faith.

Regence and Coffman Engineers have acted in bad faith to deprive Peter of relevant information concerning his rights and benefits under the plan and have also acted in bad faith to deny proper appellate review and take appropriate action.

Regence and Coffman Engineers' bad faith continues. On October 8, 2018, Regence wrote to Peter Hewko informing him that the request for authorization for services by Quality Living, Inc., an inpatient facility in Omaha, Nebraska, was denied. **Exhibit C.** Regence's decision appears to be in bad faith. The record demonstrates that Peter needs the care. The physician reviewer's conclusion that "the clinical documentation we received does not clearly show you have intense and complex care needs that make this level of facility care safe and more practical than a lower level of care..." is bellied by correspondence Quality Living, Inc., Dr. Robert Lada of Peak Neurology, and Dr. Loretta Lee of Alaska Family Care Associates. **Exhibit D.** It does not even appear from the October 8, 2018 letter that the physician reviewer even looked at the correspondence by Peter Hewko's physicians.

Moreover, not until on or about November 6, 2018, did Peter and his family learn of a 60-day per year skilled nursing benefit. On or about December 7, 2018, the benefits manager improperly advised Mrs. Hewko that neurodevelopmental therapy benefits are only available to people who have never had a skill (such as speaking) in the first place. That is not true. Those benefits are also available to "restore or improve function."

It is well known that the medical outcome for stroke patients depends on the level and quality of medical care they receive early. Regence and Coffman Engineers' bad faith refusal to provide benefits to Peter when he needed them the most, and when he was in the most danger, shocks the conscious. It reflects a willingness to take advantage of families and patients at their most vulnerable.

In a desperate effort to assist Peter, when he was abandoned by his insurer as to necessary care, his parents used their own funds to the tune of approximately $75,000, to pay for Peter's care. These funds are significant by any measure, and more so here because the Hewkos are retired and have limited sources of income.

Although Regence appears to have, in part, reconsidered its decision, as it approved a very limited 10-day skilled nursing facility stay at Quality Living, Inc. on November 6, 2018 (**Exhibit E**), that decision is grounded in the antecedent bad faith and moreover, is insufficient to provide Peter the care he needs and is entitled to receive. That is, the approved benefits are per se insufficient and are "too little, too late," given Regence's ongoing bad faith. Further complicating matters is the fact as of December 1, 2018, Medicare has since become Peter's primary insurance. Mrs. Hewko has tried for several weeks to determine Regence's coverage of Quality Living, Inc. and neurodevelopmental therapy benefits, to no avail. Her efforts to determine coverage for Peter under both Regence and Medicare have continued, to no avail. Regence representatives have given conflicting information. Regence has engaged in denial, and has provided inaccurate, conflicting information. This dilatory conduct has jeopardized Peter's health and his ability to receive the quality medical care that is essential for stroke recovery, benefits that Peter is entitled to under his Plan. Quality Living, Inc. may not be willing to accept him as a patient given that change in coverage. Peter's family is investigating whether Quality Living, Inc. will accept Peter or if he will need to be admitted to another facility.

These issues would not have occurred had Regence and Coffman Engineers been forthcoming at the outset. Thus, we request that you reconsider your decision of October 8, 2018 to provide Peter only limited care, in light of your failures to do so on prior occasions and in light of your bad faith conduct. Regence and Coffman Engineers should offer to resolve any and all potential causes of action by Peter and his family as to their bad faith and misrepresentations to them. Such potential resolution should include, at a minimum, approval and payment for

neurodevelopmental therapy at Quality Living, Inc. or another appropriate facility of his and his physician(s)' choosing, with unlimited benefits and full payment of all expenses while Peter resides there, and with no time limit. That is, Peter and his family should be guaranteed that they will not shoulder any of the costs of his care at the facility. Given Peter's need for intervention, and the long-term effects of having denied him his benefits, Peter is entitled to receive all appropriate care at a skilled nursing facility at your expense. Peter's family should be reimbursed for all costs of care they have shouldered to date (i.e., the approximately $75,000 spent for his care). Further, Regence and Coffman should cover all costs of his parents' travel and housing related to the facility where Peter receives treatment. Note in this regard that failure by you to address the issues raised in this correspondence will be construed as bad faith. It is our intention to take all appropriate action on Peter's behalf, including, if necessary, filing suit against you and all culpable parties and seeking all appropriate remedies, including punitive damages.

Sincerely,

WEIDNER & ASSOCIATES
*A Professional Corporation*

Phillip Paul Weidner

Exhibit I, 5

11935 Broadwater Drive
Eagle River, Alaska 99577

Regence BlueShield                                        July 26, 2017
Attn: Regence Level 1 Member Appeals
PO Box 4208
Portland, OR 97208-4208

Re: Peter D. Hewko
    DOB 12/21/1977
    Member # EUG090077277
    Group # 60020992

To Whom It May Concern,

Peter suffered a severe stroke June 15, 2016, resulting in Right Hemiparesis, Cerebral Edema,
Dysphagia, and Aphasia. The physician in the admitting hospital determined Peter not safe for
travel until he was more stable. Peter was then admitted to Providence Alaska Medical Center's
in-patient rehabilitation unit. Checking with Regence, the staff was told Peter's benefit was 30 days
in-patient and 25 days annual, out-patient therapy. I expressed the absurdity of this limited benefit
considering his diagnosis. Despite trying to get additional coverage that was all Regence gave and
he was discharged home from the hospital to receive in-home therapy. The request for greater
home therapy through Rehab Without Walls was denied.

In April 2017, I learned from our benefit case manage, Danese, that a neurodevelopmental therapy
benefit exists in Regence's plan of which we were never informed yet for which Peter met the
criteria. Since than I have tried to determine why Peter did not receive this benefit. Providence
Alaska Medical Center related submitting neuro diagnosis codes with documentation. I was told
by Danese the criteria for qualification is "brain injury resulting in limited repertoire of movement
patterns." Right hemiparesis from a stroke certainly qualifies.

There is no specific stroke neuro rehabilitation center or facility in Alaska. Requiring stabilization
before travel in a local hospital should not have entailed denial of access to the
neurodevelopmental therapy benefit. Regence's direction was to send Peter home at discharge.
Regence should have communicated the existence of this benefit so that we could have proceeded
accordingly at the time of discharge. Only traditional therapy benefit information was provided,
which did not correlate with his diagnosis. I would assume this would come under the nurse case
manager's purview, as she was assigned to help inform us and those involved in Peter's care of all
appropriate and available benefits, and it was she with whom Providence Alaska Medical Center
staff spoke as well as customer service.

This denial of this benefit has resulted in a needless, huge out-of-pocket expense and
compromised Peter's vital first year of treatment and recovery. I therefore request compensation
for neuro rehabilitation expenses we have incurred since his discharge from Providence, which

would have been covered under the neurodevelopmental therapy with unlimited therapy, including cost of my provision of 24/7 home care and our living expenses while out of state. I also request unlimited out-patient neuro rehabilitation therapy, as deemed necessary by Peter's physician, going forward as long as necessary. This request is in keeping with both the spirit and letter of the plan.

HTTP authorization should be on record.

Sincerely,

S. Jane Hewko

S. Jane Hewko



Regence
Regence BlueShield is an Independent Licensee
of the Blue Cross and Blue Shield Association

## APPEAL FORM

Please return completed form to:
Regence BlueShield
Attn: Regence Level 1 Member Appeals
PO Box 4208
Portland, OR 97208-4208
or via fax at 1 (888) 496-1542

Please call us if you have any questions or
need help completing this appeal form.
1 (800) 458-3523

| Patient Name | Date of Birth | Phone Number |
|---|---|---|
| Peter Hawko | 12-21-1977 | (907) 980-8629 |
| Address | City, State, ZIP Code | E-mail Address (optional) |
| 11935 Broadwater Dr. | Eagle River, AK  94587 | Esmdh1@yahoo.com |
| Identification Number | Group Number | Today's Date |
| 0 9 0 0 7 7 2 7 7 | 6 0 0 2 0 9 9 2 | 7-26-2017 |
| Doctor/Hospital Name | Date(s) of Service or Incident | |
| a RegenceBlueShield | 7-1-16 — 7-31-16 current | |
| Claim Numbers (if available) | | |
| Providence Alaska Medical Center | | |

Note: 1) Appeals must be received within 180 days from the date of initial adverse determination.
2) If you are initiating an appeal on behalf of another person who is not a minor, Regence BlueShield (Regence) must also
receive a completed HIPAA authorization form, signed by that person, which can be found on the myRegence.com website.

Please explain the problem. Include background, time frames, and the names of anyone else you have spoken with to try and resolve
the problem, any supporting documentation, and your expectations or suggestions for resolution.

*see attached letter*

List any supporting documentation attached to this form

We need your permission to authorize Regence to request any medical records needed to answer your appeal. This includes
information about alcohol or drug abuse, mental health, AIDS or HIV virus, if applicable. This authorization begins today and remains
in effect so long as your appeal is being reviewed. You will receive an acknowledgment letter for this appeal with information about
the appeals process.

| SIGNATURE OF PATIENT OR AUTHORIZED REPRESENTATIVE *  Peter Hko | 7-26-17  TODAY'S DATE |
|---|---|
| (Patient's parent/guardian may sign if patient is a minor child) | |

| THIS SECTION TO BE COMPLETED BY OFFICE STAFF | Did the member fax or mail in supporting documentation? Check box if Yes. ☐  Did the member provide this authorization verbally? Check box if Yes. ☐ |
|---|---|

FORM 4561WA - Page 1 of 1 (Rev. 4/11)     *F4561.XWA0EN04110101*

**Subject:** Fwd: Information from the Alaska Division of Insurance

**From:** Jane hewko (jane_hewko@hotmail.com)

**To:** dchewk@yahoo.com;

**Date:** Thursday, July 13, 2017 10:11 PM

Please print this email. If the link in the previous email does not bring up the form to print, go to the link in this email, find consumer complaint form to print the form and instructions.

Sent from my iPad

Begin forwarded message:

> **From:** "Nickel, Shauna K (CED)" <shauna.nickel@alaska.gov>
> **Date:** July 12, 2017 at 8:31:53 AM AKDT
> **To:** Jane hewko <jane_hewko@hotmail.com>
> **Subject: RE: Information from the Alaska Division of Insurance**

Good Morning Jane,

While I'm happy to forward a complaint you initiate on to the USDOL/EBSA as they have oversight regarding that plan, you might want to make contact with them directly to better understand how they can assist you. I will link our complaint form and their contact information.

U.S. Department of Labor
Employee Benefits Security Administration
300 Fifth Avenue, Suite 1110
Seattle, WA 98104

USDOL / EBSA 866-444-3272

Alaska Division of Insurance Complaint:
https://www.commerce.alaska.gov/web/ins/Consumers/Complaints/FileAComplaint.aspx

Please let me know if I can further assist you.

Respectfully,

Shauna K. Nickel
Consumer Service Supervisor
Alaska Division of Insurance
907-269-7914

-----Original Message-----
From: Jane hewko [mailto:jane_hewko@hotmail.com]
Sent: Tuesday, July 11, 2017 11:36 AM
To: Nickel, Shauna K (CED) <shauna.nickel@alaska.gov>

Subject: Re: Information from the Alaska Division of Insurance

Good morning Shauna,
Coffman's health plan was established in Washington state and it is self-funded.
Are you able to start the inquiry with the Department of Labor? My first question is to verify that I
was informed correctly by Danese, our point person for benefits, that neuro developmental therapy
is available through Coffman Engineers plan. I was told the benefit was for "brain injury with
limited repertoire of movement patterns". The benefit provided unlimited, in-patient therapy and
must be medically necessary. My son had right hemiparesis.
I appreciate your help.
Jane Hewko

Sent from my iPad

> On Jul 11, 2017, at 8:12 AM, Nickel, Shauna K (CED) <shauna.nickel@alaska.gov>
> wrote:

Good Morning Ms. Hewko

You may consider asking Coffman Engineers human resources department a couple of
questions such as 1.) Where was the health insurance policy/plan was established so
that I can point you to the correct state division of insurance and 2.) Is his health plan
self-funded. If it is self-funded the complaint goes to the US Department of Labor,
Employee Benefits Security Administration. The aforementioned questions would help
us appropriately direct the complaint.

Alternately, you can file the complaint with our office, I will send it to Premera Blue
Cross and they will internally determine where it should go and advise us.

Consumer complaint form:

https://www.commerce.alaska.gov/web/ins/Consumers/Complaints/FileAComplaint.aspx

Respectfully,

Shauna K. Nickel

Consumer Service Supervisor

Alaska Division of Insurance

907-269-7914

-----Original Message-----

From: Jane hewko [mailto:jane_hewko@hotmail.com]

Sent: Monday, July 10, 2017 10:23 PM

To: Nickel, Shauna K (CED) <shauna.nickel@alaska.gov>

Subject: Re: RE:

Dear Shauna Nickel,

My son's employer is Coffman Engineers at 800 F Street, Anchorage, AK 99501. The phone number is 272-6664. They also have offices in Washington, California, Montana, Hawaii, Guam. The main office may be in Seattle.

Thank you for getting back to me.

Jane Hewko

Sent from my iPad

> On Jul 10, 2017, at 8:47 AM, Nickel, Shauna K (CED) <shauna.nickel@alaska.gov> wrote:

Good Morning Ms. Hewko,

While we have Premera in Alaska, Regence Blue Shield/Blue Shield is not under Alaska DOI. Can you refresh my memory as to the employer for the plan and where the employer is located?

Thank you,

Shauna Nickel

Consumer Services Supervisor

-----Original Message-----

From: Jane hewko [mailto:jane_hewko@hotmail.com]

Sent: Friday, July 07, 2017 1:18 PM

To: Nickel, Shauna K (CED) <shauna.nickel@alaska.gov>

Subject:

Dear Shauna,

I spoke with you June 26 regarding Regence/Blue Shield potentially withholding knowledge of benefits appropriate for my son after his stroke. You were going to get back to me regarding his potential standing and under which jurisdiction our concern would fall. I am wondering if you have made a determination yet. I am concerned regarding raising the issue with the insurance company timely, not that we fall outside the time limit for appealing.

I look forward to hearing from you.

Jane Hewko

Sent from my iPad



**THE STATE**
*of* **ALASKA**

**GOVERNOR BILL WALKER**

**Department of Commerce, Community, and Economic Development**

DIVISION OF INSURANCE

550 West Seventh Avenue, Suite 1560
Anchorage, AK 99501-3567
Main: 907.269.7900
Fax: 907.269.7910

Dear Consumer,

This letter responds to your request for assistance in resolving your insurance concerns. The mission of the Division of Insurance is to protect the public. We have the authority to take the appropriate administrative action against any violator of the Alaska Insurance Laws. We investigate complaints to ensure that anyone conducting insurance business in our state complies with those insurance laws.

Please complete the Insurance/ Inquiry / Complaint Form. If you need more space to explain your concerns, please use extra sheets of paper and sign each page. Your signature authorizes the Division of Insurance to investigate your complaint. Attach copies of all correspondence, policies and other items relating to your problem. Itemized medical bills, explanation of benefits sheets, property loss forms, vehicle appraisals and police reports are examples of other items you might include. Including complete documentation will help the division in handling your complaint.

Once you return this form, the complaint will be forwarded to the insurance company for a response and the consumer service specialist assigned to your complaint will contact you. We will need approximately forty-five days to complete our investigation.

Thank you for this opportunity to assist you with your insurance concerns.

Sincerely,

Shauna K. Nickel
Consumer Service Supervisor
Alaska Division of Insurance

# DIVISION OF INSURANCE
## CONSUMER SERVICES SECTION

550 West 7th Avenue, Suite 1560, Anchorage, AK 99501-3567
Telephone: (907) 269-7900
Fax: (907) 269-7910
(800) INSURAK (800) 467-8725 (in-state only)

### INSURANCE INQUIRY/COMPLAINT FORM

YOUR NAME _____

PHONE _____ ALT PHONE _____ EMAIL _____

ADDRESS _____
        Street                  City            State   Zip Code

NAME OF EMPLOYER_____

INSURED'S NAME AND ADDRESS (if different from above)

_____

YOUR AGE ☐ Under 25 ☐ 25 to 49 ☐ 50 to 64 ☐ 65+

INSURANCE COMPANY _____
                       (Give name exactly as shown on policy.)

EFFECTIVE DATE _____

POLICY TYPE _____ POLICY NUMBER(S) _____
        (Auto, Health, Life, etc.)

NAME OF AGENT OR ADJUSTER _____

DATE OF LOSS _____ DATE CLAIM SUBMITTED _____
       (if applicable)

GROUP INSURANCE MEMBERSHIP OR CERT. NO. _____

EMPLOYER _____

Please give a **FACTUAL STATEMENT OF THE PROBLEM.** Enclose a copy of your policy
and any related material as described in the letter on the reverse side. If more space is
required, use an additional sheet of paper and **sign each page.**

Signature _____ Date _____

11935 Broadwater Drive

Eagle River, Alaska 99577


Regence BlueShield

Attn: Regence Level 1 Member Appeals

PO Box 4208

Portland, OR 97208-4208


July 26, 2017


Re: Peter Hewko

Member #: EUG090077277

Group #: 60020992


To Whom It May Concern,

Peter suffered a severe stroke June 15, 2016, resulting in Right Hemiparesis, Cerebral Edema, Dysphagia, and Aphasia. The physician in the admitting hospital determined Peter not safe for travel until he was more stable. Peter was then admitted to Providence Alaska Medical Center's in-patient rehabilitation unit. Checking with Regence, the staff was told Peter's benefit was 30 days in-patient and 25 days annual, out-patient therapy. I expressed the absurdity of this limited benefit considering the diagnosis. That was all Regence gave and he was discharged home from the hospital to receive in-home therapy. The request for greater home therapy through Rehab Without Walls was denied.

In April 2017, I learned from our benefit case manager, Danese, that a neurodevelopmental therapy benefit exists in Regence's plan of which we were never informed yet for which Peter met the criteria. Since then I have tried to determine why Peter did not receive this benefit. Providence Alaska Medical Center related neuro diagnosis codes with documentation were submitted. I was told by Danese the criteria for qualification is "brain injury resulting in limited repertoire of movement patterns." Right hemiparesis from a stroke certainly qualifies.

There is no specific stroke neuro rehabilitation center or facility in Alaska. Requiring stabilization before travel in a local hospital should not have entailed denial of access to the neurodevelopmental therapy benefit. Regence's direction was to send Peter home at discharge. *Regence should have communicated the existence of this benefit* so that we could have proceeded accordingly at the time of discharge. Only traditional therapy benefit information

was provided, which did not correlate with his diagnosis. I would assume this would come under the nurse case manager's purview, as she was assigned to help inform us and those involved in Peter's care of all appropriate and available benefits, and it was she with whom Providence Alaska Medical Center staff spoke as well as customer service.

This denial of benefit has resulted in a needless, huge out-of-pocket expense and compromised Peter's vital first year of treatment and recovery. I therefore request compensation for neuro rehabilitation expenses we have incurred since his discharge from Providence, which would have been covered under the neurodevelopmental therapy benefit with unlimited therapy, including cost of my provision of 24/7 care and our living expenses while out of state. I also request unlimited out-patient neuro rehabilitation therapy, as deemed medically necessary by Peter's physician, going forward as long as necessary. This request is in keeping with both the spirit and letter of the plan.

HIPPA authorization should be on record.

Sincerely,


S. Jane Hewko

11935 Broadwater Drive

Eagle River, Alaska 99577


Regence BlueShield

Attn: Regence Level 1 Member Appeals

PO Box 4208

Portland, OR 97208-4208


July 26, 2017


Re: Peter Hewko

Member #: EUG090077277

Group #: 60020992


To Whom It May Concern,

Peter suffered a severe stroke June 15, 2016, resulting in Right Hemiparesis, Cerebral Edema,
Dysphagia, and Aphasia. The physician in the admitting hospital determined Peter not safe for
travel until he was more stable. Peter was then admitted to Providence Alaska Medical Center's
in-patient rehabilitation unit. Checking with Regence, the staff was told Peter's benefit was 30
days in-patient and 25 days annual, out-patient therapy. I expressed the absurdity of this
limited benefit considering the diagnosis. That was all Regence gave and he was discharged
home from the hospital to receive in-home therapy. The request for greater home therapy
through Rehab Without Walls was denied.

In April 2017, I learned from our benefit case manager, Danese, that a neurodevelopmental
therapy benefit exists in Regence's plan of which we were never informed yet for which Peter
met the criteria. Since then I have tried to determine why Peter did not receive this benefit.
Providence Alaska Medical Center related neuro diagnosis codes with documentation were
submitted. I was told by Danese the criteria for qualification is "brain injury resulting in limited
repertoire of movement patterns." Right hemiparesis from a stroke certainly qualifies.

There is no specific stroke neuro rehabilitation center or facility in Alaska. Requiring
stabilization before travel in a local hospital should not have entailed denial of access to the
neurodevelopmental therapy benefit. Regence's direction was to send Peter home at discharge.
*Regence should have communicated the existence of this benefit so that we could have
proceeded accordingly at the time of discharge.* Only traditional therapy benefit information

was provided, which did not correlate with his diagnosis. I would assume this would come under the nurse case manager's purview, as she was assigned to help inform us and those involved in Peter's care of all appropriate and available benefits, and it was she with whom Providence Alaska Medical Center staff spoke as well as customer service.

This denial of benefit has resulted in a needless, huge out-of-pocket expense and compromised Peter's vital first year of treatment and recovery. I therefore request compensation for neuro rehabilitation expenses we have incurred since his discharge from Providence, which would have been covered under the neurodevelopmental therapy benefit with unlimited therapy, including cost of my provision of 24/7 care and our living expenses while out of state. I also request unlimited out-patient neuro rehabilitation therapy, as deemed medically necessary by Peter's physician, going forward as long as necessary. This request is in keeping with both the spirit and letter of the plan.

HIPPA authorization should be on record.

Sincerely,


S. Jane Hewko

Home | Mail | Search | News | Sports | Finance | Celebrity | Weather | Answers | Flickr | Mobile | More · Try Yahoo Mail on Firefox...

All ∨ · da... ...ewko, search your mailbox   Search Mail   Search Web   Home   david



Archive | Move ∨ | Delete | Spam ∨ | ··· | Most Recent by Date ∨

Today

☐ The Coffee... | Index Fund Wisdom - July 2017 Newsletter BILL SCHULTI | 5:01 AM
☐ ● L.L.Bean | Thick and Thirsty Beach Towels  Plus, enjoy free shippin | 3:47 AM
☐ Jane hewko | Appeal letter  David, I sent you a copy of my appeal letter | 2:16 AM
☐ Jane hewko | appeal letter  11935 Broadwater Drive Eagle River, Alaska | 1:58 AM

appeal letter | People

Jane hewko <jane_hewko@hotmail.com>
To David Hewko, Jane hewko
Today at 1:58 AM

11935 Broadwater Drive
Eagle River, Alaska 99577

Regence BlueShield
Attn:  Regence Level 1 Member Appeals
PO Box 4208
Portland, OR 97208-4208

July 26, 2017     Peter D. Hewko
                  DOB 12/2V 69 77
Re: Member # EUG090077277
    Group # 60020992

To Whom It May Concern,
Peter suffered a severe stroke June 15, 2016, resulting in Right Hemiparesis, Cerebral
Edema, Dysphagia, and Aphasia. The physician in the admitting hospital determined
Peter not safe for travel until he was more stable. Peter was then admitted to
Providence Alaska Medical Center's in-patient rehabilitation unit. Checking with
Regence, the staff was told Peter's benefit was 30 days in-patient and 25 days annual,
out-patient therapy. I expressed the absurdity of this limited benefit considering his
diagnosis. Despite trying to get additional coverage that was all Regence gave and he
was discharged home from the hospital to receive in-home therapy. The request for
greater home therapy through Rehab Without Walls was denied.
In April 2017, I learned from our benefit case manage, Danese, that a
neurodevelopmental therapy benefit exists in Regence's plan of which we were never
informed yet for which Peter met the criteria. Since then I have tried to determine why
Peter did not receive this benefit. Providence Alaska Medical Center related submitting
neuro diagnosis codes with documentation. I was told by Danese the criteria for
qualification is "brain injury resulting in limited repertoire of movement patterns."
Right hemiparesis from a stroke certainly qualifies.
There is no specific stroke neuro rehabilitation center or facility in Alaska. Requiring
stabilization before travel in a local hospital should not have entailed denial of access to
the neurodevelopmental therapy benefit. Regence's direction was to send Peter home
at discharge. Regence should have communicated the existence of this benefit so that
we could have proceeded accordingly at the time of discharge. Only traditional therapy
benefit information was provided, which did not correlate with his diagnosis. I would
assume this would come under the nurse case manager's purview, as she was assigned
to help inform us and those involved in Peter's care of all appropriate and available
benefits, and it was she with whom Providence Alaska Medical Center staff spoke as
well as customer service.
This denial of this benefit has resulted in a needless, huge out-of-pocket expense and
compromised Peter's vital first year of treatment and recovery. I therefore request
compensation for neuro rehabilitation expenses we have incurred since his discharge
from Providence, which would have been covered under the neurodevelopmental
therapy with unlimited therapy, including cost of my provision of 24/7 home care and
our living expenses while out of state. I also request unlimited out-patient neuro
rehabilitation therapy, as deemed necessary by Peter's physician, going forward as long
as necessary. This request is in keeping with both the spirit and letter of the plan.



Regence
Regence BlueShield is an independent licensee
of the Blue Cross and Blue Shield Association

P.O. Box 2998
Tacoma, WA 98401

1800 Ninth Ave
Seattle, WA 98111

August 31, 2017

S JANE HEWKO
11935 BROADWATER DR
EAGLE RIVER AK 99577-7908

Member Name:      Peter D. Hewko
Member ID #:      090077277

**Subject: Update regarding your complaint**

Dear Jane:

Thank you for sending your personal letter explaining Peter's condition and symptoms, and for taking the time to communicate your concerns with us. This letter is in response to your complaint regarding rehabilitation services and neurodevelopmental therapy benefits for Peter, which was received by our office on August 1, 2017.

Peter has benefits for both outpatient rehabilitation services as well as neurodevelopmental therapy. Benefits are applied to services on claims submitted to Regence based on the diagnosis codes listed on the claims by the performing providers.

Peter's providers are responsible for supplying Regence with the most appropriate codes for the services they provide and for the condition(s) they are treating. The U.S. Department of Health and Human Services has designated the use of International Classification of Diseases for reporting diagnosis codes. These codes are used in accordance with the Health Insurance Portability and Accountability Act (HIPAA) to submit claims for medical procedures and services to private health insurance companies, such as Regence. We cannot change or edit any coding on claims submitted to us for processing, nor are we able to change the benefit a claim has been applied towards.

According to the our records, benefit information regarding neurodevelopmental therapy as well as outpatient rehabilitation services was discussed between you and a Regence Case Manager on August 17, 2016; October 3, 2016; and March 28, 2017.

Based on the claims we have received in our system, for Peter's benefit year beginning January 1, 2016, through December 31, 2016, he used 28 out of his 30 inpatient rehabilitation services visits; 12 of his 25 outpatient rehabilitation services visits; and 0 of his 25 outpatient neurodevelopmental therapy visits.

*[handwritten notes in left margin, partially legible]*

Letter Number: 97544816 / 97544816                    1

As of the date of this letter, for Peters benefit year beginning January 1, 2017, he has used 0 out of his 30 inpatient rehabilitation services visits; 9 of his 25 outpatient rehabilitation services visits; and 0 of his 25 outpatient neurodevelopmental therapy visits.

As of the date of this letter, we have not received any claims for Peter submitted with a neurodevelopmental diagnosis code.

While we are sympathetic to your situation, unfortunately Regence is unable to reimburse you for the home care you have provided to Peter, or for your living expenses while out of state.

In addition, requests for additional therapy services for Peter will need to be submitted to Regence by Peter's treating providers. As Peter has not used his maximum benefits for outpatient rehabilitation services or neurodevelopmental therapy for the 2017 benefit year, requests for additional visits cannot be reviewed at this time.

Going forward, benefit and claims information as well as a health cost estimator can be accessed at our secure website www.regence.com. Members may create and/or log into their account to access information related to their health care plan.

I have enclosed a copy of Peter's 2016 and 2017 Summary Plan Description benefit sections for neurodevelopmental therapy and rehabilitation services.

We truly apologize for any frustration or inconvenience this matter has caused you, Peter, and your family. We send our best to Peter for a full and healthy recovery.

As our member, you are our first priority. We appreciate that you have entrusted something as important as your health care coverage to us.

Should you have additional questions, our Customer Service Department is available to help. You may call them toll-free at (888) 849-3681, or on the TTY line for the hearing impaired at 711.

We look forward to continuing to serve you.

Sincerely,

*Tina D.*

Tina D.
Appeals Specialist
Regence BlueShield

Enclosures

  

Regence

Regence BlueShield is an independent Licensee
of the Blue Cross and Blue Shield Association

P.O. Box 2998
Tacoma, WA 98401

1800 Ninth Ave
Seattle, WA 98111

PETER D HEWKO
11935 BROADWATER DR
EAGLE RIVER AK 99577-7908



October 8, 2018

| | |
|---|---|
| Member Name: | Peter D. Hewko |
| Member ID #: | 090077277 |
| Reference Number: | 002923603 |
| Requesting Provider: | Quality Living, Inc. |
| Facility: | Quality Living, Inc. |
| Admission Date: | October 15, 2018 |
| Services Denied: | Skilled Nursing Facility Stay |

**Unfortunately, we cannot approve the request to cover the services listed above.**
*The reason for this denial is detailed below.*

Dear Peter,

We are writing about a request for authorization of the above service(s) submitted by Quality Living, Inc.

Following a review of the information available, and our physician reviewer has determined that the service(s) are not medically necessary. We cannot authorize the service(s) listed above because the medical necessity criteria has not been met. The clinical documentation we received does not clearly show you have intense and complex care needs that make this level of facility care safe and more practical than a lower level of care. Your care needs can safely be met at a lower level of care. Your health plan does not cover services that are not medically necessary.

We've included the information below from the Medical Policy used in this review to help you discuss this decision with your doctor. The clinical documentation we received from your provider did not adequately support the following policy requirements:

- Skilled nursing facility (SNF) or subacute facility care is/was needed for appropriate care of patient because of the following:

Exhibit C, page 1

Letter Number: 100768167 / 100768167                    1                         ASOLOS02

*handwritten at top:* peer review by 10/23    10/8 +15

- o The patient has tense and complex care needs that make recovery facility care safer and more practical than attempting care at a lower level and the following:
  - These care needs include the multiple components of care that are delivered by skilled professionals at a recovery facility

This decision applies to the service requested above and all services, equipment or supplies associated with it. Please share this letter with any other provider or facility that may provide these service(s) to you.

**How we reached this decision.**
In reaching our decision, we considered all of the information you or your doctor submitted as well as the relevant contract and policy information. The information we considered is listed below.

You may request any or all documentation free of charge or you can access the specific information as shown below.

| Documentation available | Where to find it |
|---|---|
| Criteria used to make our decision<br>■ Your preauthorization request<br>■ Supporting information submitted by you and your providers<br>■ Description of diagnosis and service requested<br>■ Your group health plan's Summary Plan Description (benefit booklet), section(s):<br>  ● Specific Exclusions<br>  ● Definitions<br>(refer to the booklet's table of contents)<br>■ MCG(TM), 22nd Edition: ORG: M-5083 (RFC), "Stroke" | Call Customer Service at 1 (855) 895-1150 TTY for hearing impaired: 711 |

**Your provider may also contact us.**
This information is also being sent to your provider. If your provider wants to speak with our physician adviser before an appeal is submitted, they can request a peer-to-peer conversation online at www.availity.com or www.regence.com. A request for peer-to-peer discussion must be made within 15 days from the date of this letter. Our physicians may not be in the same medical specialty as your provider. This discussion is not intended to reverse the denial, but is a chance for your provider to further understand the reason for the denial based on our policies.

**You have the right to make an appeal.**
You or any representative you authorize, including an attorney, may appeal this decision. If you wish to appeal, you must file a request for appeal within 180 days of your receipt of this decision letter. If you don't appeal within this time period, you will not be able to continue to pursue the appeal process and may jeopardize your ability to pursue the matter in any forum. Your appeal and any additional information related to your appeal can be faxed to us at (877) 663-7526, or mailed to:

Exhibit C, page 2

Regence BlueShield
ATTN: ASO Correspondence, Intake, and Appeals
P.O. Box 2998
Tacoma, WA 98401-2998

You may also appeal this decision by calling Customer Service at 1 (855) 895-1150 or if you have a hearing or speech impairment, please call us at TTY 711.

We will mail you written notice of the decision within 14 days of receiving your appeal unless a longer timeframe applies.

If your provider determines that taking the usual time allowed to review your appeal could seriously affect your life, health, or ability to regain maximum function, or would subject you to severe pain that cannot be adequately managed without the care or treatment, your provider may request an expedited review. We will call you with the decision of an expedited appeal as soon as possible after the decision, but no later than 72 hours of receipt of the appeal. We will mail you written notification of the decision within three calendar days of the verbal notification. You may also request an external expedited review at no cost to you at the same time you request an internal expedited review.

**What to do now.**
You can discuss this decision with your doctor as we have also provided this information to your doctor. You can call Customer Service at the phone number on the back of your member ID card if you have any questions or concerns. If you are a TTY user, you can dial 711.


Sincerely,

*Elizabeth F.*

Elizabeth F.
Intake and Correspondence Specialist
Regence BlueShield


Enclosure:     Pre-Service Member Appeal Process Overview
cc:            Quality Living, Inc.

# NNDISCRIMINATION NOTICE

Regence complies with applicable Federal civil rights laws and does not discriminate on the basis of race, color, national origin, age, disability, or sex. Regence does not exclude people or treat them differently because of race, color, national origin, age, disability, or sex.

**Regence:**
**Provides free aids and services to people with disabilities to communicate effectively with us, such as:**
- Qualified sign language interpreters
- Written information in other formats (large print, audio, and accessible electronic formats, other formats)

**Provides free language services to people whose primary language is not English, such as:**
- Qualified interpreters
- Information written in other languages

If you need these services listed above, please contact:

**Medicare Customer Service**
1-800-541-8981 (TTY: 711)

**Customer Service for all other plans**
1-888-334-6347 (TTY: 711)

If you believe that Regence has failed to provide these services or discriminated in another way on the basis of race, color, national origin, age, disability, or sex, you can file a grievance with our civil rights coordinator below:

**Medicare Customer Service**
Civil Rights Coordinator
MS CS B32AG, P.O. Box 1827
Medford, OR 97501
1-866-749-0355 (TTY: 711)
Fax: 1-888-309-8784
medicareappeals@regence.com

**Customer Service for all other plans**
Civil Rights Coordinator
MS CS B32B, P.O. Box 1271
Portland, OR 97207-1271
1-888-344-6347 (TTY: 711)
CS@regence.com

You can also file a civil rights complaint with the U.S. Department of Health and Human Services, Office for Civil Rights electronically through the Office for Civil Rights Complaint Portal at https://ocrportal.hhs.gov/ocr/portal/lobby.jsf, or by mail or phone at:

U.S. Department of Health and Human Services
200 Independence Avenue SW,
Room 509F HHH Building
Washington, DC 20201

1-800-368-1019, 800-537-7697 (TDD).

Complaint forms are available at http://www.hhs.gov/ocr/office/file/index.html.

Exhibit C, page 4

## Language assistance

ATENCIÓN: si habla español, tiene a su disposición servicios gratuitos de asistencia lingüística. Llame al 1-888-344-6347 (TTY: 711).

注意：如果您使用繁體中文，您可以免費獲得語言援助服務。請致電 1-888-344-6347 (TTY: 711)。

CHÚ Ý: Nếu bạn nói Tiếng Việt, có các dịch vụ hỗ trợ ngôn ngữ miễn phí dành cho bạn. Gọi số 1-888-344-6347 (TTY: 711).

주의: 한국어를 사용하시는 경우, 언어 지원 서비스를 무료로 이용하실 수 있습니다. 1-888-344-6347 (TTY: 711) 번으로 전화해 주십시오.

PAUNAWA: Kung nagsasalita ka ng Tagalog, maaari kang gumamit ng mga serbisyo ng tulong sa wika nang walang bayad. Tumawag sa 1-888-344-6347 (TTY: 711).

ВНИМАНИЕ: Если вы говорите на русском языке, то вам доступны бесплатные услуги перевода. Звоните 1-888-344-6347 (телетайп: 711).

ATTENTION : Si vous parlez français, des services d'aide linguistique vous sont proposés gratuitement. Appelez le 1-888-344-6347 (ATS : 711)

注意事項：日本語を話される場合、無料の言語支援をご利用いただけます。1-888-344-6347（TTY:711）まで、お電話にてご連絡ください。

Díí baa akó nínízin: Díí saad bee yáníłti'go Diné Bizaad, saad bee áká'ánída'áwo'déé', t'áá jiik'eh, éí ná hóló, koji' hódíílnih 1-888-344-6347 (TTY: 711.)

FAKATOKANGA'I: Kapau 'oku ke Lea-Fakatonga, ko e kau tokoni fakatonu lea 'oku nau fai atu ha tokoni ta'etotongi, pea te ke lava 'o ma'u ia. ha'o telefonimai mai ki he fika 1-888-344-6347 (TTY: 711)

OBAVJEŠTENJE: Ako govorite srpsko-hrvatski, usluge jezičke pomoći dostupne su vam besplatno. Nazovite 1-888-344-6347 (TTY- Telefon za osobe sa oštećenim govorom ili sluhom: 711)

ប្រយ័ត្ន៖ បើសិនជា...សូមគិនិយាយ ភាសាខ្មែរ, សេវាជំនួយផ្នែកភាសា ដោយមិនគិតឈ្នួល គឺអាចមានសំរាប់បំរើអ្នក។ ចូរ ទូរស័ព្ទ 1-888-344-6347 (TTY: 711)។

ਧਿਆਨ ਦਿਓ: ਜੇ ਤੁਸੀਂ ਪੰਜਾਬੀ ਬੋਲਦੇ ਹੋ, ਤਾਂ ਭਾਸ਼ਾ ਵਿੱਚ ਸਹਾਇਤਾ ਸੇਵਾ ਤੁਹਾਡੇ ਲਈ ਮੁਫਤ ਉਪਲਬਧ ਹੈ। 1-888-344-6347 (TTY: 711) 'ਤੇ ਕਾਲ ਕਰੋ।

ACHTUNG: Wenn Sie Deutsch sprechen, stehen Ihnen kostenlose Sprachdienstleistungen zur Verfügung. Rufnummer: 1-888-344-6347 (TTY: 711)

ማስታወሻ:- የሚናገሩት ቋንቋ ኣማርኛ ከሆነ የትርጉም እርዳታ ድርጅቶች፣ በነጻ ሊያግዝዎት ተዘጋጀተዋል። ወደ ሚከተለው ቁጥር ይደውሉ 1-888-344-6347 (መስማት ለተሳናቸው:- 711)::

УВАГА! Якщо ви розмовляєте українською мовою, ви можете звернутися до безкоштовної служби мовної підтримки. Телефонуйте за номером 1-888-344-6347 (телетайп: 711)

ध्यान दिनुहोस्: तपाईंले नेपाली बोल्नुहुन्छ भने तपाईंको निम्ति भाषा सहायता सेवाहरू निःशुल्क रूपमा उपलब्ध छ। फोन गर्नुहोस् 1-888-344-6347 (टिटिवाइ: 711

ATENȚIE: Dacă vorbiți limba română, vă stau la dispoziție servicii de asistență lingvistică, gratuit. Sunați la 1-888-344-6347 (TTY: 711)

MAANDO: To a waawi [Adamawa], e woodi balloojima to ekkitaaki wolde caahu. Noddu 1-888-344-6347 (TTY: 711)

โปรดทราบ: ถ้าคุณพูดภาษาไทย คุณสามารถใช้บริการช่วยเหลือทางภาษาได้ฟรี โทร 1-888-344-6347 (TTY: 711)

ໃປດຊາບ: ຖ້າວ່າ ທ່ານເວົ້າພາສາ ລາວ, ການບໍລິການຊ່ວຍເຫຼືອດ້ານພາສາ, ໂດຍບໍ່ເສັຽຄ່າ, ແມ່ນມີພ້ອມໃຫ້ທ່ານ. ໂທຣ 1-888-344-6347 (TTY: 711)

Afaan dubbattan Oroomiffaa tiif, tajaajila gargaarsa afaanii tola ni jira. 1-888-344-6347 (TTY: 711) tiin bilbilaa.

توجه: اگر به زبان فارسی صحبت می کنید، تسهیلات زبانی بصورت رایگان برای شما فراهم می باشد. با (TTY: 711) 1-888-344-6347 تماس بگیرید.

Exhibit I, 26



# Pre-Service Member Appeal Process

If you do not agree with our decision in this letter, you (or someone you authorize to represent you, including an attorney) may appeal it within 180 days of your receiving this letter. This is a summary of the member appeal process. For more details, please look at your benefit booklet or contact the Customer Service Department at the number on the back of your member card.

## Regular Process

**First Level of Appeal:** You must request a review within 180 days of this notice. You may include information such as medical records and letters from your provider to support your appeal request and we will consider it in our review. When we get your appeal, it will be reviewed by someone not involved in our first decision and who does not report to the person who made the previous decision. In appeals that involve issues requiring medical judgment, the decision is made by a health care professional with training and experience related to that issue. We will send you our written decision within 14 days of receiving your appeal unless a longer timeframe applies. You may ask for copies of the records and documents relevant to your request that were used in making our decision. These will be given to you free of charge.

**Second Level of Appeal:** If your group plan offered by your employer offers a second level of appeal from us, our letter to you about the outcome of your first level appeal will tell you how to ask for further appeals, or you can contact our Customer Service Department. This second level of appeal must be asked for within 180 days of getting your written notice about the first appeal. You may include additional information to support your appeal request and we will consider it in our review. The second appeal will be reviewed by someone not involved in the prior decisions and not reporting to the person who made the previous decisions. As with your first appeal, we will send our written decision on the second appeal within 14 days of getting your appeal unless a longer timeframe applies.

**External Review:** If your group plan offered by your employer offers an external review from us and you still do not agree with our decision you may ask for review by an external independent review organization (IRO) at no cost to you. Our second level appeal decision letter will tell you how to ask for an external IRO review. We will send the external IRO all material we considered in making our decision and the IRO will notify you of their determination. You may submit more information as well, either by sending it to us or by submitting it directly to the IRO. An external IRO review decision is binding on both of us unless other remedies are available under state or federal law.

## Expedited Process

**When is Expedited Review Available?** Expedited review is available when you or your physician reasonably believes that waiting for a decision under the regular appeal process timeframe could jeopardize your life, health, or ability to regain maximum function.

Expedited review is also available when a physician familiar with you and your medical condition believes that waiting for a decision under the regular appeal process timeframe would subject you to severe pain that cannot be adequately controlled without the care that is being considered. Verbal notice of the decision of an expedited appeal will be provided to you as soon as possible after the decision, but no later than 72 hours of receipt of the appeal. Written notification of the decision will be mailed to you within three calendar days of the verbal notification. If you do not agree with our expedited appeal decision, an external expedited review may be available. You may ask for an external expedited review at the same time you request an internal expedited review from us if your group plan offered by your employer offers an external review through us.

Case 3:19-cv-00169-JWS    Document 25-1    Filed 10/03/19    Page 27 of 59    Exhibit I, 27

**Subsequent Action**
Upon exhaustion of the full member appeal process for your plan, most members covered by a private employer sponsored group coverage (not public employer group), may bring action under Section 502(a) of ERISA.

**Additional Resources**
For additional questions about your rights, this notice, or for assistance, you can contact the US Department of Labor's Employee Benefits Security Administration (EBSA) at 1-866-444-EBSA (3272) or www.askebsa.dol.gov.



# QUALITY LIVING, INC.

## FAX TRANSMITTAL

6404 North 70ᵗʰ Plaza • Omaha, NE 68104

Phone (402) 573-3748 • Fax (402) 573-2170

**Tri-DImensional Rehab·**

*Brain and Spinal Cord
Injury Specialists*

www.qliomaha.com

| To: | BCBS of WA<br>Attn: In-Patient Skilled<br>Authorizations | From: | Patty Sanderson |
|---|---|---|---|
| Date: | 10/4/2018 | Fax #: | 855-848-8220 |
| | # Pages    30 | | |

QLI is requesting admission for your member, Peter Hewko (DOB 12/21/77) on on Monday, 10/15/2018 to our specialized need skilled nursing facility serving individual with brain and spinal cord injuries.

I am including Peter's Tentative Plan of Care, Letters from his physicians, Dr. Lada and Dr. Lee and his latest OP therapy notes. Peter has not received OP therapy since the beginning of August as her ran out of the benefits.

If you have any questions or need additional informaion, please call me at 402-573-3748. Thank you- Patty

Deliver life-changing rehabilitation and care.
Protect dignity, instill purpose, and create hope.
Commit to excellence.

This faxed information is intended only for the use of the individual or entity to which it is addressed and contains information that is confidential. Furthermore, this information may be protected by Federal Law relating to confidentiality (42 CFR Part 2) prohibiting any further disclosure. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any review, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (402-573-3700) and return the original message to:
Quality Living, Inc.
6404 N. 70ᵗʰ Plaza
Omaha, Ne 68104

Thank you.

Exhibit D, page 1



**QLI**

Tri-Dimensional Rehab'
Brain and Spinal Cord
Injury Specialists

**Tentative Plan of Care**
**QLI**
**October 4, 2018**

**RE:** Peter Hewko
**DOB:** 12/21/77
**DOI:** 06/15/16

### BRIEF H&P:
The following tentative plan of care for Peter Hewko is based upon QLI application materials, past medical records, and clinical information obtained from providers in Anchorage, AK. A QLI admissions liaison completed an evaluation with Peter via video conference on 8/6/18. Peter's mother, Jane, was present and contributed information during the conversation. Peter Hewko is a 40 year-old man who lives in Anchorage, AK. He sustained an acute ischemic left middle cerebral artery stroke on 6/15/16. He was emergently treated at Alaska Regional Hospital and was found to have a left internal carotid artery occlusion. Peter received appropriate medical treatment and transferred to Providence Medical Center on 7/1/16 for acute rehabilitation. Peter discharged to his parents' home in Eagle River, AK, on 7/29/16. Since returning home, Peter has attended outpatient rehabilitation services at Barrow Neurological Institute in Phoenix, AZ, and Providence Hospital in Anchorage. Peter has had one seizure since his stroke, but has been otherwise medically stable.

### PAST MEDICAL/SOCIAL HISTORY:
Prior to the stroke, Peter was in good health. He has a history of migraine headaches, although notes indicate that he has not had one in over a year. Peter had hernia repair in 2017. Peter has a bachelors and masters degree in engineering. Prior to his stroke, he was employed full-time as a structural engineer. Outside of work, Peter was very active. He enjoyed hiking, ice climbing, cross-country skiing, and was an avid runner. Peter designed and physically constructed much of his house. He is mechanically inclined and enjoyed working on automobiles. Currently, Peter spends his time completing home exercise programs and therapeutic tasks with his mother. He occasionally goes for walks, but must have someone to accompany him. Peter tries to maintain social relationships via social media and/or email; however, he rarely gets to see his friends. Peter has a dog, but the dog must live with friends because Peter's parents do not allow pets in the house.

### CURRENT STATUS AND ONGOING NEEDS:
Peter is dependent on his mother and father for health care and medical management. In regards to medication, his mother has made a "cheat sheet" for Peter to use while filling medication cassettes. She sets-up the activity ensuring that Peter has each medication and that all bottles are full. Peter requires oversight, as he makes occasional mistakes but does not consistently identify the errors. Peter cannot refill medications via phone or in person due to his aphasia. He is dependent on his parents for communication with physicians, specialists, and other rehabilitation professionals regarding his health care. Peter cannot share specific information, ask detailed questions, or make complex medical decisions. This compromises his independence, but more importantly, it compromises his safety. Peter could not gain assistance via 911 phone call in case of an emergency.

Peter has a limited repertoire of movement in his right upper extremity, specifically his shoulder, arm, and wrist. He does not have movement in his fingers. He must wear a sling to prevent subluxation of his shoulder. He continues to need minimal support from his mother during ADL's secondary to hemiparesis. Peter requires assistance for fine motor aspects of dressing, including donning/doffing shoulder sling, ankle-foot orthotic (AFO), donning/doffing shoes, ties his shoes, and closing belts. He requires assistance for dressing, specifically buttoning shirts and pants. Peter is dependent for shaving. Though these tasks may appear inconsequential,

Peter cannot complete basic personal cares without assistance. He is dependent upon a caregiver. Occupational therapy notes from 8/1/18 indicate that Peter has minimal activation in triceps and biceps, but only in certain positions. Peter and his mother have been provided on-going education regarding home exercises. Unfortunately, Peter has exhausted his outpatient benefits and no longer receives treatment. He good potential to restore function but must have continued, intensive services.

Peter has limited repertoire of movement and reduced strength in his right lower extremity. He must wear an AFO for ambulation and use a single-point cane. Peter must have supervision when ambulating. He has gait abnormalities secondary to decreased coordination, impaired balance, and weakness in his right lower extremity. Peter does not ambulate in uneven or unfamiliar environments without close stand-by assistance. For example, he must have someone by his side to walk around the neighborhood, dining at a restaurant, or getting in/out of a car. Physical therapy notes from 8/1/18 indicate that he has activation in his hamstring and ankle dorsiflexion while seated on the stationary bike. During standing activities, Peter substitutes hamstring and ankle dorsiflexion with excessive hip flexion in order to achieve foot clearance. This is a maladaptive gait pattern. Peter has good potential to make additional gains; however, he has exhausted his outpatient benefit. A home exercise program is not adequate to advance skills and restore function.

Peter has persistent deficits in his vision. He has right-sided neglect. His visual tracking is slow. Peter demonstrates impaired visual perception and visual spatial awareness. His visual memory is impaired. Peter reports issues with vertigo and has been diagnosed with vestibular dysfunction. He receives treatment at Katmai Eye and Vision Center in Anchorage, AK. Outside of formal therapy sessions, Peter has a home exercise program. He is dependent upon his mother for initiation, set-up, and completion. However, he is able to complete all the recommended activities

Peter has residual weakness on the left side of his face. He has non-fluent, expressive aphasia. His expressive language is characterized by reduced output, word-finding issues, and nonspecific speech. Peter has basic awareness of his deficits and can become frustrated when trying to communicate. He often looks to his communication partner (mother) to suggest words or offer choices to supplement his verbal output. This makes Peter reliant on others to share his message. He has an iPad with Apps and word prediction that he attempts to use as augmentative communication. However, he requires oversight from his mother or father, as he cannot read and, thus, cannot identify errors. Peter attempts to write emails but cannot spell many words. If he is able to generate the first letter(s) of a word, he cannot consistently recognize the word from choices offered in word prediction. From a receptive standpoint, Peter has relative strength in auditory comprehension. However, his ability to understand length, complex, abstract, or novel information is impaired. Peter cannot read age-appropriate material and requires maximal support. His is currently working on relearning sight words and numbers. He cannot read unfamiliar environmental print. Peter struggles to use his iPad because he cannot read and/or recognize the Apps. His mother facilitates daily reading practice via iPad Apps and flash cards; however, these activities fail to simulate the demands of the real world and have proven ineffective for generalization of skills. Peter's higher-level, executive function skills are difficult to assess secondary to his global language impairments. It is obvious that Peter is oriented. His memory for distant and biographic information is intact. His short-term, recent memory is functional. Peter is able to focus and maintain attention to a task. His alternating attention is impaired. Peter's processing speed is slow. He demonstrates basic problem solving and reasoning skills. It must be noted that Peter's parents do not feel comfortable leaving him home alone. Although he is typically safe and a good judge of his abilities, Peter's mother and father are concerned that, if left alone, Peter may attempt an activity that would compromise his safety. His mother and father are also cognizant that Peter could not gain emergency assistance due to his language deficits.

In summary, Peter Hewko remains with significant residual deficits secondary to his stroke. He must have access to 24-hour skilled caregiver support. Peter requires daily assistance and/or oversight for functional mobility and basic self-cares. Beyond basic needs, Peter lacks quality of and purpose in life. Prior to his stroke,

Exhibit D, page 3

Peter was employed full time. He held a highly specialized and professional-level job. His intellect and communication skills were average, if not above average. Peter was active and took efforts to maintain his physical health. Peter's deficits present a barrier to returning to independent living. He continues to necessitate intensive, specialized rehabilitation. Peter has exhausted his outpatient benefits. Regardless, the outpatient setting is inadequate. He needs a program that focuses on transitioning skills from the formal setting to real-world activities. It is no longer sufficient for Peter to achieve formal goals in the clinic. He must advance his functional skills, require less intervention from caregivers, regain independence in his home, resume roles within his social circle, reintegrate into the community, and reevaluate future goals for paid employment or volunteering.

**TENTATIVE PLAN OF CARE:** Peter Hewko has been referred to QLI for intensive rehabilitation. The referral is supported by the outpatient therapists at Providence Rehabilitation Services, Loretta Lee, MD, at Alaska Family Associates, and Dr. Lada at Peak Neurology. Peter's prognosis for further recovery is good, but he must have intensive rehabilitation in a program specialized in brain injury. At QLI, Peter will receive intensive rehabilitation from therapists specialized in acquired brain injury. Peter's treatment plan will be carried out in formal sessions using evidence-based practices and rehabilitation technology. The residential setting will facilitate generalization of skills and continued independence in real-world settings. QLI's program is unlike any rehabilitation setting in Alaska. He cannot receive theses services closer to home. It is necessary and reasonable for Peter to admit to QLI and participate in this specialized program, focused on transitional living. Peter's tentative plan of care includes, but is not limited to:

**Nursing and Nutrition:** Peter will be evaluated and followed by QLI's primary care physician. He will have 24-hour skilled nursing supervision and care. Nurses will administer medications per physician orders. New medical issues will be evaluated and treated as indicated. At this time, Peter is dependent upon his mother for medication administration and refills. He is also dependent on his mother for all aspects of communication regarding his health care. Due to his aphasia, Peter is not able to share specific information with physicians. He cannot effectively make phone calls to schedule appointments. Nursing will collaborate with speech-language pathology to design a self-medication program. Augmentative and alternative communication will also be explored to promote Peter's ability to express his basic wants and needs with medication and rehabilitation professionals. Peter's weight and nutritional status will be closely monitored by a registered dietician.

**Occupational Therapy:** A licensed occupational therapist will evaluate Peter and provide formal treatment sessions each day. Goals will target physical and cognitive aspects related to basic personal cares. This includes toileting, bathing, dressing, grooming, and eating. At this time, Peter requires minimal assistance with activities of daily living. Occupational therapy will advance skills to level of complete independence. If necessary, Peter will learn compensatory techniques and/or learn to implement external supports to achieve independence. Beyond basic cares, Peter will have opportunities to rehabilitate higher-level skills related to home management and community access. This including household chores, basic meal preparation, and transportation. Prior to his stroke, Peter lived in his own home. He still has his house but cannot safely return to this residence. It is his main goal to be able to move back into his house.

**Physical Therapy:** A licensed physical therapist will evaluate Peter and provide formal treatment sessions each day. Goals will target functional mobility skills for safety and independence with transfers and basic self-cares. Moving beyond this basic level, Peter's therapists will treat mobility, ambulation, strength, and coordination in higher-level activities to facilitate safety in the home and community. Peter is a young man. He was very physically fit and extremely active prior to his stroke. Peter must receive intensive rehabilitation for all life activities, not just basic personal cares. A treatment plan that targets only simple goals such as transfers and ambulation is inadequate and falls short of Peter's true potential for recovery.

**Speech Therapy:** A licensed speech-language pathologist will evaluate Peter and provide formal treatment sessions each day. Goals will target expressive communication, alternative and augmentative communication,

Exhibit D, page 4

adaptive technology, environmental controls, and higher-level cognitive skills such as self-advocacy, initiation, and problem solving. Peter has aspects of both expressive and receptive aphasia. It is reasonable and necessary to provide intensive treatment in order to advance his independence and quality of life. Speech-language pathologists will implement constraint-induced treatment. Formal goals will be incorporated into functional, real-world settings such as the community and the residential setting. This intensifies treatment effects and facilitates generalization. Peter's higher-level, executive function skills will be formally evaluated by neuropsychology. Speech-language pathologists will then write formal goals to rehabilitate areas of impairment. Peter has basic cognitive abilities, as evidenced by his behavior at his parents' home. However, his ability to process information, solve problems, and make sound decisions has not been fully assessed. These are necessary skills to return to independent living or to reduce caregiver burden/supervision needs.

**Psychology and Neuropsychology:**  A licensed neuropsychologist will complete a full battery of cognitive tests to evaluate Peter. Neuropsychology will consult with speech-language pathology to develop a treatment plan for cognitive deficits. Psychologists will address issues related to mood, awareness, and acceptance. Treatment will be provided via formal sessions or within a consultative role. QLI's psychiatrist will evaluate and treat as needed. Treatment will aim to restore hope and optimism for Peter and his family regarding quality of life after this injury. Support and stroke education will also be provided for Peter and family throughout his rehabilitation.

**Discharge Planning and Transition Services:**  Assistance will be provided for locating appropriate and necessary services at time of discharge. Members from Peter's team will transition functional routines and train caregivers in Eagle River. QLI will follow Peter closely for three months. Periodic contact will be made for an additional three years after discharge.

This plan of care is tentative and based upon previous medical records, clinical notes from providers in Alaska, and information gathered during interviews with Peter and his family. A final and formal treatment plan will be developed by QLI's comprehensive treatment team after initial evaluations.

Tentative plan of care submitted by:


Trisha Funk, MS, CCC-SLP
Clinical Admissions Liaison
QLI

**Admin Documents**



Peter Hewko

11995 Broadwater Dr.

Eagle River AK 99577

DOB: 12/21/1977

To Whom It May Concern:

Mr. Hewko suffered an embolic left MCA ischemic Stroke June of 2015. Mr Hewko's follow up care began on 08/04/2016. During Mr Hewko's first evaluation it was noted he would benefit from intensive rehab on a in-patient basis. Since his stroke he has had continued cognitive and physical impairment which includes aphasia and right hemiparesis. Mr Hewko will require intensive therapy 5 days a week to maintain and improve his functioning.

Services will include:

* Speech therapy
* Occupational therapy
* Physical therapy

In addition, Mr. Hewko will require 24hour skilled care due to his continued aphasia and right hemiparesis. These services are medically necessary for Mr. Hewko. There are no facilities in Alaska that can provide Mr. Hewko with these services.

If you have any questions, please contact my office.

Sincerely,

Robert Lada M.D.

Peak Neurology and Sleep

907-346-7550

2741 Debarr Road, Suite C-505     www.peakneurology.com     907-351-8640  Phone
Anchorage, AK 99508                                        907-351-5674   Fax



**ALASKA FAMILY CARE**
ASSOCIATES, LLC.

08/14/2018

Patient:  Hewko, Peter

To whom it may concern:

Peter Hewko was seen at our office on 08/14/2018. He is an unfortunate 40 year old male who suffered an ischemic stroke as a result of a carotid dissection. He has right sided hemiparesis and hemiplegia as well as cognitive deficits with speech and calculation of numbers. He was an engineer before the stroke.

Mr. Hewko needs unlimited, continued, intensive therapy 5 days a week in order to improve and maintain function. His therapies need to include speech and language, occupational, and physical therapy. He needs access to 24 hour skilled nursing care because of his cognitive and physical impairments. Due to his stroke, he has aphasia and right hemparesis. No similar facility is available in Alaska, so I am recommending that he go to Quality Living Inc. in Omaha, Nebraska.

Should you have any questions, please feel free to contact our office at the number listed below.

Thank you for allowing me to participate in the care of this patient.

Sincerely,

*L. Lee, MD*

Loretta L. Lee, MD

Cc:
Enc:

4001 Dale Street, Suite 210  Anchorage, AK  99508
Phone: 907-929-5888  Fax: 907-929-5882

Exhibit D, page 7


# Hewko, Peter D

MRN: 00039993

**Progress Notes** Encounter Date: 6/18/2018

## Kjersten J Skjold, PT
Physical Therapy
**Providence Rehabilitation Services**
4411 Business Park Blvd Bldg M 20
Anchorage AK 99503-7145
Phone: 907-212-8300
Fax: 907-212-6310

### Physical Therapy Initial Assessment

**Date:** 6/18/2018

**Patient Information**
**Patient Name:** Peter D Hewko
**Date of Birth:** 12/21/1977     **Age:** 40 y.o.

**History**
**Encounter Diagnoses**

| Code | Name | Primary? |
|---|---|---|
| • R26.9 | Gait abnormality | |
| • R26.89 | Balance disorder | |
| • R27.8 | Coordination impairment | |
| • R29.898 | Weakness of right lower extremity | |
| • Z74.09 | Impaired mobility | |
| • M25.60 | Decreased range of motion | |

**Date of Onset:** 7/1/2016
**Referring Provider:** Lada, Robert A, MD
**Services Requested:** PT eval and treat s/p CVA

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Acute ischemic left middle cerebral artery (MCA) stroke (HCC) | |
| • Flaccid hemiplegia affecting right dominant side (HCC) | |
| • ICAO (Internal carotid artery occlusion), left | |
| • Migraine | |
|    *none for a year* | |
| • Range of motion deficit | |
|    *right arm severe weakness. physical therapy* | |
| • Uses brace | |
|    *right ankle and lower leg* | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • INGUINAL HERNIA REPAIR | Right | 9/20/2017 |
| *Procedure: RIGHT INGUINAL HERNIA REPAIR; Surgeon: John P Muffoletto, MD; Location: PAMC OR* | | |

Case 3:19-cv-00169-JWS    Document 25-1    Filed 10/03/19    Page 36 of 59
Exhibit I, 36

Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                 Encounter Date: 06/18/2018

---

· **TUMOR EXCISION**
*left upper arm as a child. believed to be secondary to vaccination.*

**Allergies**
**Allergen**                                          **Reactions**
· Tape [Adhesive & Tape]                          Itching, Dermatitis and Rash
  *Pt skin red and scratched raw over every lead site on chest and abdomen, circular pattern where
  adhesive was on skin, itching, scabbed and reddened where pads had been placed.*

  *Patient needs skin protectant applied to skin before electrode pads or tape.*

Prior treatment: Outpatient rehab clinic - within the last sixty days

**Rehab Precautions**
~~... ....~~                 Office Visit from 6/18/2018 in Providence Rehabilitation Services

| Rehab Precautions | |
| --- | --- |
| Precautions | ARTF, Seizure |
| Precautions Comments | DGI 10, Berg 33 |

**Learning Style**
Patient's Optimum Learning Style: performance of task
**Abuse Assessment**
Do you feel safe in your current relationship or home?: Yes
Is anyone in your life misusing your money or property?: No
Have you been hit, slapped physically hurt or threatened by your partner?: No
Possible clinical concerns noted by clinician?: No
Action taken by clinician: No concerns

**Subjective:** Patient his accompanied by his mother, Jane, during today's initial evaluation. She
provides the majority of the subjective information. He is ambulating with the use of a single point
cane and AFO donned on his right lower extremity. Both patient and his mother are aware that
his insurance benefits are maxed out and that PT services will be self pay at this time.

**Pain Assessment**
Pain Scale Used: NUMERIC
Pain Rating During Assessment: 0
Mechanism of Injury:Left MCA ischemic stroke.

History of symptoms: CVA occurred in 2016 resulting in R sided hemiplegia. Since inpatient
rehabilitation and home health PT throughout Providence he has participated in intensive
rehabilitation in Phoenix,Az for 3-4 months at a time. He and his mother report that he has
progressed from performing all mobility at the wheelchair level in 2016 to performing all mobility
with a single point cane as his strength, balance and gait has improved. They report consistent
improvement since the onset of his stroke. He has had 1 seizure since his stroke, but this has
been controlled well with medication. Per his report he has been instructed in a home exercise
program but has not been consistent or compliant with this program.

Previous level of function and limitations: Prior to his CVA he was a marathon runner and avid
hiker. He would like to get back to these activities. His mother is his primary caregiver and
advocate at this time. He does not need 24 hour supervision assist, but does require intermittent
assist for safety, driving and ADL's such as cooking/meal preparation. He requires assist to
donn/doff R AFO which is why he really does not want to use the AFO often.


Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                    Encounter Date: 06/18/2018

Work status: Off work; worked as an industrial engineer.

Living situation: Lives with his parents in a split level home. 4 steps to enter and 12 steps to get to the second floor. There are railings.

Patient's Personal Goals: Would like to return to walking without a single point cane, R AFO. Return to driving, hiking and running.

**Objective:**
Posture: Standing posture- R upper quarter lower than left upper quarter. R knee flexion in stance. R hip lower than left hip.

Range of Motion (measured in degrees):
 Lower Extremities
Lower Extremities Note: lacking full right knee extension, lacking full right ankle dorsiflexion
Strength:
LE Manual Muscle Testing (MMT)
Gross strength L LE: 5/5 normal, left
RLE Strength
R Hip Flexion: 3-/5
R Hip ABduction: 3-/5
R Knee Extension: 2+/5
R Ankle Dorsiflexion: 1/5
Muscle Tone
RUE Tone: hypertonic, mild
RLE Tone: hypertonic, mild

Sensation:
Sensation
LUE Sensation: (intact)
RUE Sensation: decreased (to light touch, temperature)
LLE Sensation: (intact)
RLE Sensation: decreased (to light touch, temperature)

Proprioception:
Proprioception
RUE Proprioception: impaired
RLE Proprioception: impaired

Coordination:
Coordination
L Finger to Nose Test : (intact)
R Finger to Nose Test : severe impairment (unable)
L Heel to Shin Test: (intact)
R Heel to Shin Test: moderate impairment
L Finger Opposition Test: (intact)
R Finger Opposition Test: severe impairment (unable)
L Diadochokinesis Test: (intact)
R Diadochokinesis Test: severe impairment (unable)
Balance
Additional Balance Tests: Dynamic Gait Index/ Berg Balance Assessment
Fall Risk Tests (Only need to perform one test listed below)
Recommendations: : (see DGI)

Exhibit D, page 10


Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                    Encounter Date: 06/18/2018

**Mobility:** Performs all transfers sit to stand and stand step transfers with use of a single point cane for safety. Demonstrates limited activation of right lower extremity during static stance and with stepping.

**Gait:** Gait performed over level indoor surfaces and outdoor surfaces including ramps. R AFO doffed during gait with single point cane in left upper extremity. He demonstrates an asymmetrical gait pattern with decreased step length on the left, stance time on the right, foot drop on the R LE, and use of vaulting gait deviation to achieve adequate floor clearance during R LE swing phase of gait. Gait speed 1.4 feet/second indicating that he requires supervision assist with gait when not using R AFO.

**Stairs:** Stair negotiation utilizing a step to gait pattern with left upper extremity support on railing. Inadequate floor clearance on the R LE due to foot drop 100% of the time. Ascends leading with the left lower extremity, descending with the right lower extremity leading. Independent with stair negotiation using this technique.

**Curbs:** Negotiates curbs using single point cane. Ascending with left lower extremity leading, and descending with R LE leading. Performs with supervision assist for balance.

**Outcome Measures:**
Berg Scale
Sit to Stand: 3
Stand unsupported: 3
Sit with back unsupported: 4
Stand to Sit: 3
Transfers: 2
Stand unsupported eyes closed: 3
Stand feet together: 3
Stand forward reach: 2
Pick up object standing: 3
Turn and look left and right while standing: 1
360 turn: 1
Alternate foot on stool while standing: 2
Tandem Stance: 2
One leg stand: 1
Total: 33

Dynamic Gait Index
Gait Level Surface: 1 - Moderate impairment, walk 20', slow speed, abnormal gait pattern, evidence of imbalance
Change in Gait Speed: 1 - Moderate impairment: makes only minor adj. of walking speed or accomplishes a change in speed w/ signify gait deviation or changes speed but has a signif. gait deviation or changes speed but loses balance but is able to recover & continue walking.
Horizontal Head Turns: 2 - Mild impairment: performs head turns smoothly with slight change in gait velocity, ie: minor disruption to smooth gait or uses walking aid
Vertical Head Turns: 2 - Mild impairment: performs head turns smoothly with slight change in gait velocity, ie minor disruption to smooth gait path or uses walking aid
Gait Pivot Turn: 2 - Mild impairment: Pivot turn safely in > 3 seconds and stops with no loss of balance
Step over Obstacle: 0 - Severe impairment: cannot perform without assistance
Step around Obstacle: 1 - Moderate impairment: is able to clear cones but must significantly decrease speed to accomplish task, or requires verbal cueing

Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                    Encounter Date: 06/18/2018

Steps: 1 - Moderate impairment: two feet to a stair, must use rail
Total score: 10
Fall Risk: <19 - high fall risk

**Today's Treatment**
Start Time: 1505        Stop time: 1610
Duration: 65 minutes
Timed Treatment Codes: 0 minutes

**1 Unit(s) 97162 Moderate Complexity Physical Therapy Evaluation:** Assessment to identify
impairments, functional limitations or change in physical function and development of a plan of
care.

Patient's presentation is evolving at this time and he is continues to improve in his functional
mobility and gait quality.
Decision-Making complexity: moderate

**1 Unit(s) Productivity/15 min:** Un-billed time spent in communication with patient, family members
and/or physicians regarding specific health care needs including equipment and discharge
recommendations.

- Time spent discussing self pay options and providing information regarding the cost of services
and financial counseling/assistance. X 10 minutes.

Next Visit:  Patient education regarding independent FES cycle program. Begin instruction in his
home exercise program. Consider use of Saebo step.

**Assessment**
Peter Hewko demonstrates a moderate level of complexity consistent with signs and symptoms
of L MCA resulting in impairments and restrictions in function. This is supported by the
history/personal factors, clinical exam and clinical presentation as noted below. Pertinent
examination findings including Right sided hemiplegia resulting in balance, coordination,
sensation and proprioception deficits, limiting his gait quality and efficiency and placing him at
high risk to fall. He demonstrates considerable weakness and intralimb coordination of the right
lower extremity dorsiflexors, hamstrings and hip flexors with decreased knee extension and ankle
dorsiflexion range of motion due to tightness of hamstrings and gastrocnemius. Currently
ambulates with a single point cane and R AFO as his Berg Balance Assessment score of 33/56
and his Dynamic Gait Index score of 10/24 indicates that he is at moderate to high risk to fall. He
is highly motivated to improve his mobility status and gait quality but has a history of seizures,
lack of compliance with his home exercise program, and is self pay which will impact the patient's
ability to participate in therapy and carry out care recommendations including his home exercise
program. His presentation is currently evolving at this time with moderate decision making
complexity. The plan of care reflects required skilled Physical Therapy to address these
complaints and restrictions and includes goals to return to functional lifestyle without complaints.

Rehabilitation potential: Patient demonstrates good potential to achieve established goals to
address the documented impairments by participating in skilled physical therapy services.

**OP PT Goals**
OP PT Goals: Goal 1, Goal 2, Goal 3, Goal 4 (To be met by discharge)



Hewko, Peter D (MR # 00039993) DOB: 12/21/1977          Encounter Date: 06/18/2018

Goal 1: Patient will score >22/24 on the Dynamic Gait Index indicating that he is at low risk to fall with functional gait activities without the use of the single point cane.
Goal 2: Patient will demonstrate improved gait velocity to >4.2 feet/second without the use of an assistive device indicating that he is independent with gait on all surfaces.
Goal 3: Patient will be independent and compliant with a home exercise program for improved balance and strength.
Goal 4: Patient will demonstrate independence negotiating uneven surfaces at inclines and declines with the use of the least restrictive assistive device indicating that he is safe to return to hiking and improve his overall quality of life.

**Plan**
Date of Onset: 7/1/2016          Start of Care Date: 6/18/2018
Requested # of Visits: 3x/week  for 6 weeks
Certification From: 6/18/2018          Certification To: 8/17/2018

**Treatment Plan/Interventions**
PT EvaluationPT Re-Evaluation97110 - Therapeutic Exercise97112 - Neuromuscular Reeducation97116 - Gait Training97530 - Therapeutic Activities97140 - Manual Therapy

Patient and/or family has indicated understanding of treatment needs and actively participated in the creation of this plan for care.

Kjersten J Skjold, DPT, C/NDT
AK License Number: 100213
Providence Rehabilitation Services
(907)212-6319

Electronically signed by: Kjersten J Skjold, PT, 6/19/2018 9:40

Office Visit on 6/18/2018    Note shared with
                            patient


Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                    Encounter Date: 08/01/2018

# Hewko, Peter D

MRN: 00039993

**Progress Notes** Encounter Date: 8/1/2018

## Kjersten J Skjold, PT
Physical Therapy
**Providence Rehabilitation Services**
4411 Business Park Blvd Bldg M 20
Anchorage AK 99503-7145
Phone: 907-212-6300
Fax: 907-212-6310

### Physical Therapy Daily Treatment Note

**Date:** 8/1/2018

**Patient Information**
Patient Name: Peter D Hewko
Date of Birth: 12/21/1977          Age: 40 y.o.

**Encounter Diagnoses**

| Code | Name | Primary? |
|------|------|----------|
| • Z74.09 | Impaired mobility | |
| • M25.60 | Decreased range of motion | |
| • R26.9 | Gait abnormality | |
| • R26.89 | Balance disorder | |
| • R27.8 | Coordination impairment | |
| • R29.898 | Weakness of right lower extremity | |

**Rehab Precautions**

Office Visit from 7/12/2018 in Providence Rehabilitation Services

| Rehab Precautions | |
|---|---|
| Precautions | ARTF, Seizure |
| Precautions Comments | DGI 10, Berg 33 |

**Visit #:** 6
**Start Time:** 1205          **Stop time:** 1245
**Duration:** 40 minutes
**Timed Treatment Codes:** 40 minutes

**Subjective:** He is here with his mom, Jane today. Not utilizing AFO as he did not have time to donn it prior to his appointment. Jane reports that they will need to stick with 1x/week as they have not been provided with financial assistance and he is currently self pay. No dorsiflexion assist utilized during today's session.

**Pain Assessment**
Pain Assessment Phase: During


Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                    Encounter Date: 08/01/2018

Pain Scale Used: NUMERIC
Pain Rating During Assessment: 0

**Objective:**
3 Unit(s) 97112 Neuromuscular Re-education/15 min: Re-education of movement, balance, coordination, posture, and/or proprioception.
- To address inter/intralimb coordination, R hamstring activation and recruitment of fast twitch muscle fibers
    - Upright cycle L11 seated with bilateral lower extremities x 5 minutes, then L 1 with right lower extremity only for facilitation of hamstring, hip flexor and ankle dorsiflexor activation 1 x 25 repetitions with min A - CGA only for lower extremity alignment.
    - Massed practice pushing/pulling 20# weighted sled over level indoor surface x 25ft with bilateral upper extremity use on weighted sled. Min A to place R UE on the sled but able to maintain 90% of the time independently- Tactile, verbal cues and demonstration provided to facilitate co-activation of trunk and upper back musculature as well as activation of posterior chain musculature including gluteus maximus, medius, hamstrings and gastrocnmemius/soleus.

**Assessment**
With repetition is able to activate hamstring and ankle dorsiflexors without assist on the upright stationary cycle. During gait with or without pushing/pulling weighted sled, substitutes hamstring and ankle dorsiflexion with excessive hip flexion to achieve floor clearance. Improved during weighted pushing/pulling task.

This patient requires the skill of a licensed physical therapist/physical therapy assistant to monitor and adjust treatment based on patient response and advance activity as needed to address documented functional limitations. Patient shows good potential to achieve treatment goals.

**Plan**
Consider use of single leg activities, Half kneeling, tall kneeling, modified lunges. Progress weighted pushing/pulling tasks.
Kjersten J Skjold, DPT, C/NDT
AK License Number: 100213
Providence Rehabilitation Services
(907)212-6319

Electronically signed by: Kjersten J Skjold, PT, 8/1/2018 13:09

Office Visit on 8/1/2018    Note shared with
                           patient


Hewko, Peter D (MR # 00039993) DOB: 12/21/1977      Encounter Date: 07/12/2018

# Hewko, Peter D

MRN: 00039993

**Progress Notes** Encounter Date: 7/12/2018

## Karyn M Joseph, Speech Pathologist
Speech Therapy
**Providence Rehabilitation Services**
4411 Business Park Blvd Bldg M 20
Anchorage AK 99503-7145
Phone; 907-212-6300
Fax: 907-212-6310

### Speech Therapy Initial Assessment

**Date:** 7/12/2018

**Patient Information**
Patient Name: Peter D Hewko
Date of Birth: 12/21/1977      Age: 40 y.o.

**History**
Date of Onset: 6/16/2018     Start of Care Date: 7/12/2018
Encounter Diagnoses

| Code | Name | Primary? |
|---|---|---|
| • I63.512 | Arterial ischemic stroke, MCA, left, acute (HCC) | Yes |
| • I69.320 | Combined receptive and expressive aphasia as late effect of cerebrovascular accident (CVA) | |
| • R41.844 | Executive function deficit | |

Referring Provider: Robert A Lada, MD

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Acute ischemic left middle cerebral artery (MCA) stroke (HCC) | |
| • Flaccid hemiplegia affecting right dominant side (HCC) | |
| • ICAO (internal carotid artery occlusion), left | |
| • Migraine | |
| *none for a year* | |
| • Range of motion deficit | |
| *right arm severe weakness. physical therapy* | |
| • Uses brace | |
| *right ankle and lower leg* | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • INGUINAL HERNIA REPAIR | Right | 9/20/2017 |
| *Procedure: RIGHT INGUINAL HERNIA REPAIR; Surgeon: John P Muffoletto, MD; Location: PAMC OR* | | |
| • TUMOR EXCISION | | |
| *left upper arm as a child. believed to be secondary to vaccination.* | | |

Hewko, Peter D (MR # 00039993) Printed by [1329034] at 8/6/18 1237


Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                    Encounter Date: 07/12/2018

**Allergies**
Allergen                                        Reactions
• Tape [Adhesive & Tape]                        Itching, Dermatitis and Rash
    *Pt skin red and scratched raw over every lead site on chest and abdomen, circular pattern where*
    *adhesive was on skin, itching, scabbed and reddened where pads had been placed.*

    *Patient needs skin protectant applied to skin before electrode pads or tape.*

Prior treatment: None within the last sixty days

**Rehab Precautions**
                   Office Visit from 7/12/2018 in Providence Rehabilitation Services

| Rehab Precautions | |
|---|---|
| Precautions | ARTP, Seizure |
| Precautions Comments | DGI 10, Berg 33 |

**Learning Style**
Patient's Optimum Learning Style: observation, performance of task
**Abuse Assessment**
Do you feel safe in your current relationship or home?: Yes
Is anyone in your life misusing your money or property?: No
Have you been hit, slapped physically hurt or threatened by your partner?: No
Possible clinical concerns noted by clinician?: No
Action taken by clinician: No concerns

**Subjective**
History of symptoms: Peter is a 40 y.o. YO male who was referred to outpatient speech services
due to difficulty with Communication and Cognition secondary to CVA. Chart review revealed
patient was out running with a friend on 8/16/16 when he experienced a severe headache and R
sided weakness. He was taken to ARH ED where he was diagnosed with a L MCA stroke and L
carotid artery occlusion. The patient experienced subsequent R hemiparesis, dysphagia,
expressive and receptive aphasia, and depression. Hospitalization was complicated by nausea
and migraine headaches. Patient participated in inpatient, rehab, home health and therapy of
some sort with home program in Phoenix Arizona between October 2017 and April 2018.

Peter attended today's evaluation accompanied by mother, Jane.
The patient and his mother are aware that his insurance benefits are maxed out and that
speech services will be self pay at this time. Patient mother asked if there were any resources
available to assist him, suggested patient check with financial assistance at Providence and with
Access Alaska for any assistance or grants.
Patient exhibited and wiped away, a minimal amount of saliva leaking from right corner of the
mouth when he was intensely engaged in a task. When asked if saliva management was an
ongoing problem, patient reported it was not a problem.

**Pain Assessment**
Pain Scale Used: NUMERIC
Pain Rating Pre Assessment: 0
Pre-existing deficits: None reported prior to CVA.
Work/School status: Patient was previously a Structural Engineer, but not working at this time
Living situation: Lives in Anchorage home with mother
Patient's goal for therapy: "math, numbers are important, and reading"


Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                    Encounter Date: 07/12/2018

**Systems Review:**
    Oral Motor (Dysarthria,Apraxia): within acceptable range
    Voice Quality: Normal
    Swallowing: normal
    Respiratory Status: is breathing easily at rest
    Headaches:No
    Dizziness: No
    Sleeping habits: generally restful sleep
    Functional Writing: No - Letters: visual spatial difficulties, resumed vision therapy
yesterday and Numbers: 50% formed    correctly, 50% rotated or not formed correctly
    Functional Reading: Impaired - Visual scanning: difficulties with visual field, resumed
vision therapy yesterday, patient not    able to read, however is working on sight words and
consonant-vowel-consonant words
    Eye conditions (diplopia, photophobia, auras, eye surgery etc): Yes
    -Completed Eye exam since symptoms started:Yes
    Ear signs and symptoms (Hearing loss, tinnitus, otalgia, phonophobia, etc): No

**Cognitive Communication Evaluation:**
The patient/patient's family reports the following complaints/changes in cognitive communication
skills since onset: Difficulty with reading, memory, and math

Ability to comprehend verbal and written instructions during evaluation: within acceptable range
Ability to attend to evaluation tasks: within acceptable range
Tangential Speech: No
Orientation: Oriented X 4
Memory deficits: Yes - Short term: 90%, Sequential: 20% and Immediate: 37.5%
Word finding/language accuracy: concrete-93%ile, abstract- <33%
Problem solving/reasoning/judgment ability: mild impairment
Auditory information processing: Normal
Impaired judgment/insight: normal
Demonstrates frustration with cognitive tasks: No

**Standardized Testing/Outcome Measures Administered:**
Completed the: Boston Naming Test  Number of spontaneously given correct responses: 55,
Number of stimulus cues given: 5, Number of correct responses following stimulus cue: 3,
Number of phonemic cues: 2, Number of correct responses following phonemic cue: 2, Number of
multiple choice cues: 0, Number of correct choices: 0, Total score: 57 and 93%ile, Paraphasias
No

Airplane Test (Crovitz, 1979) assesses short term memory of single words given in a contextual
form for salient features with 90% accuracy for short term memory. The patient received a score
of 20% for sequential memory.

Minnesota Test for Differential Diagnosis of Aphasia - Quicksand passage - patient received a
score of: 3- difficulty in recalling content, but produces 6 specific memories without irrelevancies

Completed Clock Drawing Test (CDT) -This assessment evaluates executive, visuoperceptual and
constructional skills. (Schulman, 1986). Patient received a score of:
1 points which is below the performance level of within normal limits range which is greater than or
equal to 4 points.

1 Points for the clock circle
0 Points for the numbers being in the correct order
0 Points for the numbers being in the correct spatial position

Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                    Encounter Date: 07/12/2018

0 Points for inserting two hands on the clock
0 Points for the correct time

**Today's Treatment**
**Start Time:** 1030      **Stop time:** 1130
**Duration:** 60 minutes
**Timed Treatment Codes:** 0 minutes

Treatment Code: 1 Unit 92523 Speech Evaluation/Sound with Language Comprehension and Expression: Evaluation of speech sound production (e.g., articulation, phonological process, apraxia, dysarthria); with evaluation of language comprehension and expression (e.g., receptive and expressive language).

Patient/Caregiver Education
Learner: Patient
Readiness: Acceptance
Method: Explanation, Demonstration
Response: Verbalizes Understanding
Comment: Plan of care, goals, community resources
Add Another User?: yes
Learner: Mother
Readiness: Acceptance
Method: Explanation, Demonstration
Response: Verbalizes Understanding
Assessment:
  Patient is a 40 year old male with a history of L MCA stroke and L carotid artery occlusion. The patient experienced subsequent R hemiparesis, dysphagia, expressive and receptive aphasia, and depression. Patient is exhibiting difficulty with reading, writing, math concepts, moderately abstract word retrieval, working memory deficits, and executive functioning problems, including sequential memory skills. He has to have adequate use of facilitation strategies, reading, writing, mathematics and abstract word retrieval skills to interact functionally with familiar and unfamiliar communication partners. He needs to work on all these areas to reach functional independence. He will benefit from speech/language/cognitive therapy for this purpose.

Visit Summary: Completed initial assessment, patient exhibited difficulties with abstract naming, reading, writing, working memory, sequential memory and math concepts. Patient able to recognize some errors but not spontaneously exhibiting clarification strategies, facilitation or compensatory strategies. Patient able to utilize phonemic strategies for word retrieval difficulties. Next Visit: Consider working on reading comprehension, math concepts, abstract naming, working memory and sequential memory skills.

Rehabilitation potential: Patient demonstrates good potential to achieve established goals to address the documented impairments by participating in skilled speech and language therapy services.

Treatment Goals:
Additional SLP Goals
OP SLP Goals: Goal 1, Goal 2, Goal 3, Goal 4, Goal 5
Goal 1: By Discharge, demonstrates adequate cognition and communication to interact safely and effectively in the home, school, community, work and medical settings and demonstrate adequate memory/reasoning/judgement to perform most activities with cuing provided.

Hewko, Peter D (MR # 00039993) DOB: 12/21/1977          Encounter Date: 07/12/2018

Goal 2: By 8/12/18 or discharge, Effectively utilize facilitation and compensatory memory strategies with minimal assistance with >85% accuracy, during therapeutic activities.
Goal 3: By 8/12/18 or discharge, The patient will be able to complete basic math goals such as addition, substraction, multiplication, and division as it applies to ADL activities with >80% accuracy.
Goal 4: By 8/12/18 or discharge, Patient will demonstrate functional reading comprehension with >80% accuracy for sentence length material given minimal assistance.
Goal 5: By 8/12/18 or discharge, Home program, patient will effectively take part in his individualized home education program with minimal assistance.
Plan

Date of Onset: 6/16/2016    Start of Care Date: 7/12/2018
Requested # of Visits: 8 visits 2x/week  for 4 weeks
Certification From: 7/12/2018     Certification To:  8/12/2018

Treatment Plan/Interventions
92523 - Speech Sound Language Comprehension92507 - Speech/Hearing Treatment96125 - Cognitive Testing97127/G0515 - Cognitive Training
Patient and/or family has indicated understanding of treatment needs and actively participated in the creation of this plan for care.

Evaluating SLP:
Karyn M.Joseph, M.A.,CCC-SLP    License AK #:  268
This note has been dictated using DragonSpeak 10.1 Medical voice recognition software. It will be reviewed for major content but may contain mistakes due to difficulties with voice recognition software.

Electronically signed by: Karyn M. Joseph, Speech Pathologist, 7/13/2018 9:12

Office Visit on 7/12/2018   Note shared with
                                   patient

 
Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                    Encounter Date: 07/31/2018

# Hewko, Peter D
MRN: 00039993

**Progress Notes** Encounter Date: 7/31/2018

## Karyn M Joseph, Speech Pathologist
Speech Therapy
**Providence Rehabilitation Services**
4411 Business Park Blvd Bldg M 20
Anchorage AK 99503-7145
Phone: 907-212-6300
Fax: 907-212-6310

### SpeechTherapy Daily Treatment Note
7/31/2018

Patient Name: Peter D Hewko
Date of Birth: 12/21/1977            Age: 40 y.o.

**Encounter Diagnoses**

| Code | Name | Primary? |
|------|------|----------|
| • I63.512 | Arterial ischemic stroke, MCA, left, acute (HCC) | |
| • I69.320 | Combined receptive and expressive aphasia as late effect of cerebrovascular accident (CVA) | |
| • R41.844 | Executive function deficit | |

**Rehab Precautions**

Office Visit from 7/12/2018 in Providence Rehabilitation Services

| Rehab Precautions | |
|-------------------|---|
| Precautions | ARTF, Seizure |
| Precautions Comments | DGI 10, Berg 33 |

Visit #: 3
Start Time: 1330       Stop time: 1420
Duration: 50 minutes
Timed Treatment Codes: 0 minutes

Subjective: Patient/or caregiver reported has to reduce the frequency of therapy sessions secondary to application was turned down for financial assistance from Providence. Will attend therapy 1 time every other week to continue working on goals. The patient attended today's session with mother. Patient was pleasant and cooperative with treatment tasks.

Pain Assessment:
Pain Assessment Phase: Pre
Pain Scale Used: NUMERIC
Pain Rating Pre Assessment: 0
Intervention: No

Cancellations/No shows: none

Hewko, Peter D (MR # 00039993) Printed by [1329034] at 8/6/18 1237


Hewko, Peter D (MR # 00039993) DOB: 12/21/1977          Encounter Date: 07/31/2018

**Objective:**
Treatment Code: 1Unit 92507  Speech/Hearing Treatment:  Treatment of speech, language, voice, communication, and/or auditory processing disorder.
Patient/Caregiver Education
Learner: Patient
Readiness: Acceptance
Method: Explanation, Demonstration
Response: Verbalizes Understanding, Demonstrated Understanding
Comment: strategies for word finding, math concepts and reading
Add Another User?: yes
Learner: Mother
Readiness: Acceptance
Method: Explanation, Demonstration.
Response: Verbalizes Understanding

Communication and Word retrieval
Task Description: The patient worked on moderately abstract naming utilizing semantic processing strategies including tasks such as  written-word to description or definition matching, answering specific questions, spelling to spoken word categorization, and judging relatedness to a target word given a set of specific instructions and/or descriptions.  Worked on choosing appropriate definitions /examples from a short list.
The patient worked on steps for understanding words in sentences, worked on strategies for reading comprehension : before, during and after reading text.  Worked on activities in the categories of Language Comprehension : semantics & grammar (rules and word order), Text processing (text structures, cohesion), Background knowledge (facts, concepts), Verbal reasoning (problem solving, inferences) and Meta-cognition (comprehension strategies) and category of Word recognition: Phonological awareness (syllables, phonemes, finding the rhythm when reading), Decoding ( alphabetic principle, spelling-sound correspondences), Sight recognition (of familiar words, words that do not follow the rules).  (reading comprehension for skilled reading)
Accuracy: 70% with cues, 33% without cues
Time to Complete: 20 minutes
Intensity of cueing: moderate assistance
Frequency of cueing: frequent

Communication, Cognition and Executive Functioning
Task Description: Introduced and worked on activity for speed of processing, attention to detail and following specific instructions to recall the patterns and specific details on a card or number of cards in hand which is face down.  Deck of cards is then revealed with attempts to recall card or cards in the hand.  Patient is encouraged to use facilitation strategies to recall small details as the cards are quickly revealed. (Jungle Speed)

The patient completed a word finding task combined with a immediate memory task.  The clinician read a short list of words/paragraph and explained various words/items and the patient had to successfully name the items to answer the questions, who? What? When? Where? How? from recall.  Once the items were identified and recalled,  the patient was prompted to use a memory compensatory strategy (word association, image, letter cue, etc) to assist with recalling any other storyline or sequential details. (recalling details from list of words/passages).
Visual and auditory presentations

Introduced and worked on task utilizing number/letter cards A-H and 1-8, then each participant draws a hand of five, ten and then fifteen cards from their personal deck; place one card face-up

Hewko, Peter D (MR # 00039993) DOB: 12/21/1977          Encounter Date: 07/31/2018

In the center of the table. Turn over the top directional card to indicate how to add cards to the central stack. The patient was required to utilize attention to detail, speed of processing, problem solving and planning. (Qwitch)

Accuracy: 88% visual recall, 86% auditory recall, and 70% with repetitions for following sequential instructions for 3 stage
Time to Complete: 30 minutes
Intensity of cueing: minimal assistance
Frequency of cueing: frequent

Assessment  SLP Visit Summary
# of Speech Visits: 3
Speech Visit Reminders: POC 7/12/18 to 8/12/18, progress note by visit #10
Visit Summary: Continued working on activities focusing on word finding, math computations, compensatory memory strategies, reading comprehension and introduced facilitation strategies for recall.
Next Visit Information: Consider working on reading comprehension, math concepts, abstract naming, working memory and sequential memory skills.

Refer to accuracy comments for documentation of patient's response to treatment.

This patient requires the skill of a licensed speech language pathologist to monitor and adjust treatment based on patient response, advance treatment as needed to address documented functional limitations. Patient shows good potential to achieve treatment goals.

Plan
SLP Plan for Next Visit
Next Visit Information: Consider working on reading comprehension, math concepts, abstract naming, working memory and sequential memory skills.

Treating SLP:
Karyn M.Joseph, M.A.,CCC-SLP    License AK #:  268
This note has been dictated using DragonSpeak 10.1 Medical voice recognition software. It will be reviewed for major content but may contain mistakes due to difficulties with voice recognition software.

Electronically signed by: Karyn M Joseph, Speech Pathologist, 7/31/2018 17:03

Office Visit on 7/31/2018   Note shared with
                            patient

Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                    Encounter Date: 07/18/2018

# Hewko, Peter D                                         MRN: 00039993

**Progress Notes** Encounter Date: 7/18/2018

**Benjamin P Bell, OT**
Occupational Therapy
**Providence Rehabilitation Services**
4411 Business Park Blvd Bldg M 20
Anchorage AK 99503-7145
Phone: 907-212-6300
Fax: 907-212-6310

## Occupational Therapy Initial Assessment

Date: 7/18/2018

**Patient Information**
Patient Name: Peter D Hewko
Date of Birth: 12/21/1977        Age: 40 y.o.
Date of Onset:     5/30/2018     Start of Care Date: 7/18/2018
Referring Provider: Lada, Robert A, MD

**History**
Encounter Diagnoses

| Code | Name | Primary? |
|------|------|----------|
| • I69.398, R53.1 | Weakness following cerebrovascular accident (CVA) | Yes |
| • I69.398, R27.9 | Lack of coordination as late effect of cerebrovascular accident (CVA) | |
| • R41.89 | Impaired cognition | |

**Past Medical History:**

| Diagnosis | Date |
|-----------|------|
| • Acute ischemic left middle cerebral artery (MCA) stroke (HCC) | |
| • Flaccid hemiplegia affecting right dominant side (HCC) | |
| • ICAO (internal carotid artery occlusion), left | |
| • Migraine | |
| *none for a year* | |
| • Range of motion deficit | |
| *right arm severe weakness. physical therapy* | |
| • Uses brace | |
| *right ankle and lower leg* | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|-----------|-----------|------|
| • INGUINAL HERNIA REPAIR | Right | 9/20/2017 |
| *Procedure: RIGHT INGUINAL HERNIA REPAIR; Surgeon: John P Muffoletto, MD; Location: PAMC OR* | | |
| • TUMOR EXCISION | | |
| *left upper arm as a child. believed to be secondary to vaccination.* | | |


Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                  Encounter Date: 07/18/2018

**Allergies**
Allergen
• Tape [Adhesive & Tape]

Reactions
Itching, Dermatitis and Rash
*Pt skin red and scratched raw over every lead site on chest and abdomen, circular pattern where adhesive was on skin, itching, scabbed and reddened where pads had been placed.*

*Patient needs skin protectant applied to skin before electrode pads or tape.*

Prior treatment: None within the last sixty days

**Rehab Precautions**
...........................       Office Visit from 7/12/2018 in Providence Rehabilitation Services

| Rehab Precautions | |
| --- | --- |
| Precautions | ARTF, Seizure |
| Precautions Comments | DGI 10, Berg 33 |

Fall Risk Tests (Only need to perform one test listed below)
Recommendations: : (Working with physical therapy.)
Abuse Assessment
Do you feel safe in your current relationship or home?: Yes
Is anyone in your life misusing your money or property?: No
Have you been hit, slapped physically hurt or threatened by your partner?: No
Possible clinical concerns noted by clinician?: No
Action taken by clinician: No concerns

**Subjective** This patient is very eager to get back what ever motion that he can out of his right arm and hand.

**Pain Assessment**
0/10

Mechanism of Injury: Stroke resulting in right hemiparesis
History of Symptoms: Peter Hewko is a 40 year old male that presents to Providence Outpatient Therapy OT program due to a stroke that occurred in 2016. This stroke did affect the right side of his body. This patient is able to ambulate with the use of a cane and an AFO. There is significantly limited volitional movement in his right arm. He also has aphasia and other cognitive impairments. Since the time of the stroke this patient has occasionally gone down to Arizona for an intensive therapy for 2-3 months at a time.
Previous level of function and limitations: Prior to the stroke this patient was completely independent with all ADL's. He was an avid long distance runner and overall healthy person.
Work status: Prior to this CVA in 2016 this patient was employed as a mechanical engineer.
Living situation: This patient is currently living with his parents in Eagle River.
ADL status: This patient is able to get himself dressed. He is able to complete all of his personal hygiene by himself, although it is all done left handed. This patient feeds himself left handed and writes left handed.
IADL status: This patient is not currently involved in very many higher level ADL's. This patient is not driving. This patient does not have sufficient right leg strength and control nor is his cognition is a good enough place at this time for driving. This patient has significant difficulty with numbers (both identifying them and completing arithmetic).

**Objective**

Hewko, Peter D (MR # 00039993) Printed by [1329034] at 8/6/18 1238

Hewko, Peter D (MR # 00039993) DOB: 12/21/1977                    Encounter Date: 07/18/2018

Cognition: Please read the Speech Therapy initial evaluation for in-depth cognition testing. This patient does have aphasia. This patient reports that he does struggle with correctly identifying numbers and completing arithmetic.
--Trail Making Part A and B (rapid sequencing, visual scanning, short term memory and mental multitasking). Part A (rapid sequencing of #1-25): 120 seconds (age average 28.54 seconds). Part B (alternating between numbers and letters): 174 seconds (age average 58.46 seconds).

Vision: There does not appear to be any visual field deficits however we will continue to evaluation vision on an ongoing basis.

Posture: Although this patient is rather tall there does not appear to be any postural deficits.

Range of Motion (measured in degrees):

| Active Range of Motion | Right | Left |
|---|---|---|
| Shoulder flexion | trace | full |
| Shoulder abduction | 45 | full |
| Elbow flexion* | 120 | full |
| Elbow extension | trace | full |
| Finger flexion | none | full |
| Finger extesion | none | full |

*AROM elbow flexion only able to be elicited in supine.
This patient does have full PROM right shoulder.

Strength: RUE strength not tested due to lack of AROM.

Sensation: Intact.

Coordination: Right upper extremity fine motor and gross motor coordination are absent.

Joint Mobility: Overall joint mobility is good, although higher tone in right hand and wrist does result in stiff joints.   No right shoulder or elbow ROM limitations.

Wounds: None

Edema: None

Today's Treatment
Start Time: 1600        Stop time: 1700
Duration: 60 minutes
Timed Treatment Codes: 15 minutes

# of OT Visits: 1

   1 Unit(s) 97166 Moderate Complexity Occupational Therapy Evaluation: Assessment to identify impairments, functional limitations or change in physical function and development of a plan of care.

   1 Unit(s) 97110 Therapeutic Exercise/15 min: To develop strength, range of motion and flexibility
--demonstration of push away's at the edge of the mat and kitchen counter.
--wiping off kitchen counter with right hand.



*Hewko, Peter D (MR # 00039993) DOB: 12/21/1977*　　　　　　　Encounter Date: 07/18/2018

**Assessment:**

**Clinical Impression:** Peter Hewko is very appropriate for skilled Occupational Therapy to address the physical, visual as well as functionally based cognitive deficits due to the stroke. This patient has significant right sided hemiparesis with significantly limited volitional movement through out his right arm/hand. This patient also has aphasia which has affected his ability to quickly identify numbers and come arithmetic. From a visual stand point my initial impression is that his vision is not as much affected as some of the other systems but we will continue to evaluate his vision and eye sight. This patient is still young and was in rather good shape prior to his stroke in 2016. Currently this patient is living with his parents in Eagle River and they are a good support system for him.

**Summary/Analysis of course of treatment:** During this initial plan of care Occupational Therapy will be working on facilitation of active movement through out the right side of his body. OT will also work on cognition and vision as it pertains to ADL's and eventually driving. This patient is a young man that would very much like to eventually resume driving as well as living on his own. There are many areas of both basic as well as higher level activities of daily living that need to be addressed in therapy (cooking, cleaning, chores, money management).

**Impairments:**
--significant weakness through out the right side of his body.
--absent fine motor as well as gross motor coordination on the right side of body.
--impaired cognition (aphasia and difficulty with numbers and arithmetic)
--right sided facial droop.

**Rehabilitation potential:** Patient demonstrates good potential to achieve established goals to address the documented impairments by participating in skilled occupational therapy services.

**GOALS:**
OP OT Goals
OP OT Goals: Goal 1, Goal 2, Goal 3, Goal 4
Goal 1: By 9/18/18 this patient will be able to actively push through his right arm.
Goal 2: By 9/18/18 this patient will be able to hold an object in his right hand while walking.
Goal 3: By 9/18/18 this patient will be able to complete basic addition/subtraction arithmetic.
Goal 4: By 9/18/18 this patient will be able to consistently score above 60 on the saccades board thus showing improved hand eye coordination and reaction time.

**Plan**
Date of Onset: 5/30/2018　　Start of Care Date: 7/18/2018
Requested # of Visits: 2x/week　for 8 wks
Certification From: 7/18/2018　　Certification To: 9/18/2018

**Treatment Plan/Interventions**
97140 - Manual Therapy97535 - Self Care/Home Management97112 - Neuromuscular Re-education97530 - Therapeutic Activities97110 - Therapeutic Exercise97760 - Orthotic Training

Patient and/or family has indicated understanding of treatment needs and actively participated in the creation of this plan for care.

Ben Bell OTR/L
Occupational Therapist
State License AK # 1337
Providence Rehabilitation Services

Hewko, Peter D (MR # 00039993) DOB: 12/21/1977

Encounter Date: 07/18/2018

Anchorage, AK 99503
Phone (907) 212-6305
Fax (907) 212-6310

Electronically signed by Benjamin P. Bell, OT, 7/19/2018 17:00

Office Visit on 7/18/2018    Note shared with
                              patient

Hewko, Peter D (MR # 00039993) DOB: 12/21/1977          Encounter Date: 08/01/2018

# Hewko, Peter D                                    MRN: 00039993

**Progress Notes** Encounter Date: 8/1/2018

## Noranna N Dixon, OT
Occupational Therapy
**Providence Rehabilitation Services**
4411 Business Park Blvd Bldg M 20
Anchorage AK 99503-7146
Phone: 907-212-6300
Fax: 907-212-6310

### Occupational Therapy Daily Treatment Note

8/1/2018

**Patient Name:** Peter D Hewko
**Date of Birth:** 12/21/1977          **Age:** 40 y.o.

Encounter Diagnoses

| Code | Name | Primary? |
|---|---|---|
| • I69.398, R53.1 | Weakness following cerebrovascular accident (CVA) | Yes |
| • I69.398, R27.9 | Lack of coordination as late effect of cerebrovascular accident (CVA) | |
| • R41.89 | Impaired cognition | |

**Rehab Precautions**
Office Visit from 8/1/2018 in Providence Rehabilitation Services

Rehab Precautions
Precautions                   **ARTF, Seizure**
Precautions Comments          **DGI 10, Berg 33**

**Visit #:** 3
**Start Time:** 1245      **Stop time:** 1330
**Duration:** 45 minutes
**Timed Treatment Codes:** 45 minutes

**Subjective:** Pt here with his mother. States he has been able to successfully perform standing pushaways at home now.

**Pain Assessment:**
Pain Assessment Phase: During
Pain Scale Used: NUMERIC
Pain Rating During Assessment: 0

**Objective:**
  3 Unit(s)  97110  Therapeutic Exercise/15 min:  To develop strength, range of motion and flexibility

Exhibit D, page 29



 **Regence**

Regence BlueShield is an Independent Licensee
of the Blue Cross and Blue Shield Association

P.O. Box 2998
Tacoma, WA 98401

1800 Ninth Ave
Seattle, WA 98111

**Forwarding Service Requested**

*******************ALL FOR AADC 995
PB-MSP-804-ENV 19496          57
PETER D HEWKO
11935 BROADWATER DR
EAGLE RIVER AK 99577-7908

November 6, 2018

| | |
|---|---|
| Member Name: | Peter D. Hewko |
| Member ID #: | 090077277 |
| Authorization Number: | 002923602 |
| Requesting Provider: | Quality Living, Inc., Preferred |
| Facility: | Quality Living, Inc., Preferred |
| Admission Date: | November 5, 2018 |
| Services Approved: | 10 Day Skilled Nursing Facility Stay |
| Authorization Dates: | November 5, 2018 to November 15, 2018 |
| Next Review Date: | November 15, 2018 |

**Your pre-authorization request for the services above has been approved.**
*Please read this letter carefully to understand what this means before you seek care.*

Dear Peter,

We are writing about the request for authorization of the service(s) listed above submitted by Quality Living, Inc..

We have determined that the services referenced above are medically necessary for you based on a peer to peer conversation with your health care provider. We have notified the provider listed above of this approval. Please share this letter with any other provider or facility that may provide these service(s) to you.

**Important information about this authorization.**
If the above treatment plan changes in any way, your provider must notify us at 1 (866) 227-0913 to determine if an updated pre-authorization is needed. If additional days are required your provider must submit documentation supporting the need for continued services to us 24 hours prior to the last approved day. Failure to preauthorize extensions for services may result in the Plan not covering charges.

1

ASOLOS01

page1
WA01

Letter Number: 100931961 / 100931961

Exhibit E, page 1

Case 3:19-cv-00169-JWS   Document 25-1   Filed 10/03/19   Page 58 of 59
Exhibit I, 58

This authorization determines medical necessity. Your provider(s) network status, as of the date of this letter, is noted above for your reference. Please note that it is possible for your provider's network status to change before services are rendered, and your benefits are based on the network status of your provider at the time of service. It is your responsibility to verify the network status of your providers and facilities and to double-check your benefits for coverage before you receive care.

To receive a higher level of benefits from your health plan, you should ensure that in-network providers deliver all your services, including ancillary services such as lab, anesthesia, etc. If you have benefits for services provided by an out-of-network provider and you receive your care from an out-of-network provider, even if you are in an in-network facility and/or your principal provider is in-network, you may have additional costs. Except as prohibited by law, you may be responsible for paying higher out-of-network deductibles, coinsurance, and copayments, up to the applicable out-of-network maximums on your plan. You may also be responsible for the difference between the amount the out-of-network provider charges and the Allowed Amount. That difference does not apply to your deductible or out-of-pocket maximum. If you do not have benefits for out-of-network providers and you receive services from an out-of-network provider, you will be responsible for 100% of the charges and these costs do not accumulate to your plan maximums. Please review your policy or benefit booklet for details about coverage of out-of-network care.

You can review your provider's network status at Regence.com and select "Find a Doctor" or you may call us at the telephone number on the back of your member ID card.

Please let us know if we can assist you in this process.

**What this means to you.**
Approval of this request means that your health plan will cover these services according to your plan's specific benefits. Please note that our decision only evaluates this request based on our medical requirements. It does not guarantee payment or a certain amount of payment. For example, you must still be enrolled in your health plan at the time of service or benefits will not apply. Your Health Plan's reimbursement policies may affect how claims are reimbursed.

**What to do now.**
If you want to find out how your benefits will be applied to help you pay for these services, please call Customer Service at 1 (855) 895-1150. If you are a TTY user, you can dial 711. We can help you understand how much you may pay for certain services before you receive them, and how much we will pay. We can also let you know about certain choices that may impact your costs, like whether your care provider is in our network.

Sincerely,

*Amy F.*

Amy F.
Intake and Correspondence Specialist
Regence BlueShield

cc: Quality Living, Inc.