IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PETER HEWKO,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>COFFMAN ENGINEERS, INC.;<br>COFFMAN ENGINEERS, INC.<br>WELFARE PLAN; REGENCE BLUE<br>SHIELD,<br><br>　　　　　　Defendants. | Case No. 3:19-cv-00169-JWS<br><br>**ORDER ON MOTIONS<br>FOR SUMMARY JUDGMENT<br>Docs. 77 and 101** |

### I. MOTIONS PRESENTED

At docket 77 Defendant Regence Blueshield (Regence) filed a motion for partial summary judgment, to which Defendant Coffman Engineers, Inc. and Coffman Engineers, Inc. Welfare Plan (collectively, Coffman) joined at docket 78. The motion seeks dismissal of Plaintiff's first two claims, which are based on a denial of benefits. Plaintiff Peter Hewko (Plaintiff) filed his response and his cross-motion for summary judgment at docket 101. Regence filed its response/reply at docket 105. Plaintiff replied at docket 111. Regence filed a surreply with the court's permission at docket 118. Oral argument would not be of assistance to the court.

## II. BACKGROUND

Plaintiff was formerly employed by Coffman, which provides health insurance benefits to its employees by and through a self-funded benefits plan, the Coffman Engineers, Inc. Welfare Plan (the Plan). The Plan is regulated and governed by the Employee Retirement Income Security Act (ERISA). Regence is the "Claims Administrator" for the Plan and as such provides administrative services for claims made under the Plan. Regence has discretion under the Plan, as the Claims Administrator, to interpret the Plan and make benefit determinations,[1] but Regence does not assume any financial risk or obligations with respect to claims.[2] All covered medical services and supplies are paid for by Coffman.[3]

In June of 2016, while employed with Coffman and eligible for benefits under the Plan, Plaintiff suffered a cerebral stroke. He was hospitalized and incurred substantial medical expenses both during and after his hospitalization, including expenses stemming from rehabilitative services. The Plan had a provision covering rehabilitation services. Under that provision, Plaintiff's rehabilitative therapy was covered, but the benefit was limited to 30 inpatient days per calendar year and 25 outpatient visits per calendar year.[4] In April of 2017, Plaintiff's mother, Jane Hewko, learned that there was a provision in the Plan that covered

---

[1] A.R. 3540.

[2] A.R. 3542, 3482.

[3] A.R. 3482.

[4] A.R. 3508, 3586, 3664

neurodevelopmental therapy services. That provision included coverage for unlimited inpatient therapy and 25 outpatient therapy visits per calendar year.[5] Plaintiff, through his mother, wrote Regence to request that Plaintiff's family be reimbursed for out-of-pocket costs related to Plaintiff's rehabilitation that she believed should have been covered under the neurodevelopmental therapy provision, because unlike the rehabilitation services provision it provides unlimited inpatient therapy.[6] Regence denied the request, explaining that it had never received a claim from one of Plaintiff's providers that showed Plaintiff was eligible for neurodevelopmental therapy.[7] Regence argues that this decision is correct under the Plan. It asserts that Plaintiff was only eligible for benefits under the rehabilitation services provision because, based on what was submitted to Regence by his providers, therapy was needed to help him regain skills or functions that he had lost as a result of an illness. It asserts that Plaintiff was not eligible for benefits under the neurodevelopmental therapy provision because that provision only applies to services needed to treat delays in normal development and unrelated to an injury or illness.

      This ERISA lawsuit followed. Plaintiff asserts three claims against Defendants.[8] The first is based on a denial of benefits. The complaint alleges that Regence abused its discretion by denying him neurodevelopmental therapy benefits.

---

[5] A.R. 3501, 3579, 3657

[6] A.R. 1355-1357.

[7] A.R. 1363-1364.

[8] Doc. 61.

3

It also alleges that Regence misrepresented the available coverage by telling Plaintiff, his family, and the hospital that his coverage for restorative therapies was limited to 30 inpatient days and not informing him about the unlimited inpatient benefits available under the neurodevelopmental therapy provision. The complaint alleges that Regence abused its discretion when it failed "to engage [in] adequate and reasonable communications . . . regarding [Plaintiff's] benefits under [the Plan] and what was required to obtain those benefits . . . " and that his appeal rights were not adequately explained.[9]

The second claim is one for equitable surcharge. Plaintiff alleges that as a result of the denial by Regence, he has had to pay for medical, rehabilitative, or attendant care that should have been paid for under the terms of the Plan. He requests reimbursement from Defendants.

The third claim is that Regence and Coffman failed to provide requested information and documents related to the Plan and that this failure prejudiced his efforts to obtain benefits. He requests an award pursuant to 29 U.S.C. § 1132(c)(1) and/or (c)(3).

Regence filed this motion for partial summary judgment on Plaintiff's first two claims because "they are predicated on [Plaintiff's] mistaken claim that he is entitled to neurodevelopmental therapy benefits and that Regence misadvised him

---

[9] Doc. 61 at p. 8.

4

Case 3:19-cv-00169-JWS   Document 120   Filed 04/19/21   Page 4 of 18

regarding whether he was entitled to those benefits."[10] It asserts that the plain language of the Plan unequivocally covers Plaintiff's therapy under the rehabilitative services benefit and that even if there were some ambiguity Regence's interpretation is entitled to deference as reasonable. Given that Plaintiff was not eligible for neurodevelopmental therapy benefits, Regence argues, it did not fail to inform him about the availably of those benefits. Plaintiff, in turn, requests summary judgment in his favor arguing that the Plan's provision for unlimited inpatient neurodevelopmental therapy benefits applied to his situation and that Regence's decision should not be accorded deference under the abuse of discretion standard because of Regence's errors and miscommunication. Regence does not seek summary judgment as to Plaintiff's third claim.

### III. STANDARD OF REVIEW

Where an ERISA plan grants "discretionary authority to determine eligibility for benefits or to construe the terms of the plan" the default standard of review is for abuse of discretion.[11] Here, it is undisputed that the Plan grants Regence discretionary authority to determine eligibility for benefits and to construe the Plan's terms and conditions. Consequently, Regence's interpretation of the Plan's

---

[10] Doc. 77 at p.2.

[11] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Tapley v. Locals 302 & 612 of Int'l Union of Operating Eng'rs-Emp'rs Const. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir. 2013).

5

provisions addressing rehabilitative and neurodevelopmental therapy benefits is reviewed for abuse of discretion.

While a Rule 56 motion can be filed in an ERISA case governed by an abuse of discretion standard, "[t]raditional summary judgment principles have limited application" in such cases.[12] "[T]he usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply."[13] Instead, a motion for summary judgment is "merely the conduit to bring the legal question before the district court."[14]

## IV. DISCUSSION

**Regence's interpretation of the Plan**

Plaintiff received coverage for his restorative therapy pursuant to the Plan's rehabilitation services provision. The benefits under that provision were limited in nature. After an inquiry from Plaintiff's mother as to whether he could be covered under the more generous neurodevelopmental therapy provision, Regence determined that Plaintiff was not eligible for benefits under that provision because it only covered therapy needed to restore function due to a developmental delay and not due to an illness, such as a stroke. When reviewing Regence's interpretation of the Plan for abuse of discretion, the court must grant its decision a "high level of deference."[15]

---

[12] *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012).

[13] *Id.* at 930 (quoting *Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009)).

[14] *Id.*

[15] *Tapley*, 728 F.3d at 1139.

The court will not disturb the decision unless the interpretation is "not grounded on *any* reasonable basis."[16] Regence's interpretation of the Plan as to coverage "need not be the one this court would have reached, but only an interpretation which has rational justifications."[17] This standard, however, is not necessarily a rubber stamp. The court must closely read the contested terms and apply basic principles of contract interpretation to the analysis.[18] Consequently, Regence's interpretation constitutes an abuse of discretion standard if it: (1) conflicts with the plain language of the Plan; (2) "renders nugatory" other provisions in the Plan; or (3) "lacks any rational nexus" to the primary purpose of the Plan.[19]

The court turns first to the plain language of the Plan's neurodevelopmental therapy provision. That provision reads as follows:

> NEURODEVELOPMETAL THERAPY. . .
> The Plan covers inpatient and outpatient neurodevelopmental therapy services. . . . To be covered, such services must be to restore or improve function. Covered Services include only physical therapy, occupational therapy and speech therapy and maintenance service, if significant deterioration of the Claimant's condition would result without the service. You will not be eligible for both the Rehabilitation Services benefit and this benefit for the same services for the same condition.[20]

---

[16] *Id.* (quoting *Oster v. Barco of Cal. Emps.' Ret. Plan*, 869 F.2d 1215, 1218 (9th Cir. 1988)).

[17] *Id.* at 1140 (quoting *Smith v. CMTA-IAM Pension Trust*, 654 F.2d 650, 655 (9th Cir. 1981)).

[18] *Id.*

[19] *Id.*

[20] A.R. 3501, 3579, 3657. There is a slight difference in wording in the 2018 version, but that difference is not relevant to the court's analysis.

Read alone, the provision covering neurodevelopmental therapy is unclear because the term "neurodevelopmental" is not defined in the Plan, and the use of the phrase "restore or improve lost function" could reasonably suggest that it covers therapy needed to regain function a claimant once had. However, Regence's determination that this provision covers therapy needed only as a result of delays in normal development does not conflict with its plain language. It falls within the ordinary sense of the term "neurodevelopmental," which is defined as "relating to, or involving the development of the nervous system."[21] Development, in turn, is defined as "related to growth" or "[t]he growth or formation of an organ or other structure that is a natural part of the anatomy of an organism."[22] Neurodevelopmental disorders are generally described as "a group of conditions with onset in the developmental period[,] . . . typically manifest[ing] in early development . . . and are characterized by developmental deficits that produce impairments of personal, social, academic, or occupational functioning."[23] Indeed, Regence's interpretation corresponds with the Washington Administrative Code's description of "neurodevelopmental therapy" as consisting of therapy needed "to restore or improve function based on developmental delay."[24]

---

[21] *Neurodevelopmental*, Oxford English Dictionary, https://www.oed.com/view/Entry/126386 (last visited April 14, 2021).

[22] *Development*, Oxford English Dictionary, https://www.oed.com/view/Entry/51434 (last visited April 14, 2021).

[23] Diagnostic and Statistical Manual of Mental Disorder, S2H1 (5th ed. 2013).

[24] Wash. Admin. Code 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(10)(a)(i). The parties do not dispute that Washington law applies under the Plan.

Regence's interpretation of neurodevelopmental therapy as applying only to those needing therapy because of a developmental delay does not render other provisions in the Plan "nugatory." To the contrary, this interpretation is all the more reasonable when considered in light of the rehabilitation services provision. The rehabilitative services provision in the 2016 version of the Plan reads as follows:

> REHABILITATION SERVICES . . .
> The Plan covers inpatient and outpatient rehabilitation services (physical, occupational and speech therapy services only) and accommodations as appropriate and necessary to restore or improve lost function cause by Illness or Injury. You will not be eligible for both the Neurodevelopmental Therapy benefits and this benefit for the same services for the same condition.[25]

It specifically identifies when coverage under this provision is triggered: when a claimant needs therapy to restore or improve "lost function caused by Illness or Injury."[26] A stroke falls within the Plan's definition of illness.[27]

The distinction between rehabilitative therapy and neurodevelopmental therapy is even more clear in the revised rehabilitation services provision as it is set forth in the 2017 and 2018 versions of the Plan, which read as follows:

> The Plan covers inpatient and outpatient rehabilitation services (physical, occupational and speech therapy services only) and accommodations as appropriate and necessary to help a person regain, maintain, or prevent deterioration of a skill or function that has been acquired but then lost or impaired due to Illness, Injury or disabling condition. You will not be eligible for both the Neurodevelopmental

---

[25] A.R. 3508.

[26] A.R. 3508.

[27] A.R. 3544, 3624, 3702.

9

Therapy benefit and this benefit for the same services for the same condition.[28]

The provision clarifies that it applies when rehabilitation is needed to help a claimant regain a function that he once had but lost, which would be the situation occurring with a stroke. Nothing about Regence's interpretation lacks a rational nexus to the purpose of the Plan.

In sum, the court concludes that Regence's interpretation of the Plan and its resulting decision that Plaintiff did not qualify for the neurodevelopmental therapy benefit was not an abuse of discretion. It is a reasonable to conclude that a claimant can only be covered for restorative services under the neurodevelopmental therapy provision if those services are meant to restore normal levels of functioning after a diagnosis of developmental delay and that such services rendered after a stroke fall under the rehabilitative services provision.

**Other factors related to abuse of discretion review**

Plaintiff argues that this court should apply a level of skepticism to Regence's decision here, because "a claims administrator's discretionary authority can be overrode (sic) when there is evidence of bias driven decision making or flagrant procedural violations."[29] The abuse of discretion standard is not outright replaced by a de novo standard except in the "rare class of cases" where the "administrator engage[d] in wholesale and flagrant violations of procedural requirements of ERISA"

---

[28] A.R. 3586, 3664-65.

[29] Doc. 101 at p. 24.

10

Case 3:19-cv-00169-JWS   Document 120   Filed 04/19/21   Page 10 of 18

such as "failing to comply with virtually every applicable mandate of ERIA."[30] Instead, the existence of a procedural irregularity is simply a factor to be considered in deciding whether an administrator's decision was an abuse of discretion.[31] Evidence that the administrator "engaged in an ongoing, good faith exchange of information" with the claimant suffices to accord broad deference to the decision despite any procedural errors.[32] The same is true of a conflict of interest. It is a factor to be considered on a case-by-case basis.[33] "An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might."[34] Even in a situation where there is a structural conflict of interest—where the same entity which makes the benefits determination is that same entity funding the ERISA plan— the decision will still be accorded deference if unaccompanied by "evidence of malice, of self-dealing, or of a parsimonious claims-granting history."[35]

While Plaintiff acknowledges that Regence does not have a structural conflict of interest because it does not fund the Plan, it argues that the court should nonetheless look skeptically upon its decision given its overall conduct here. In support of his position, he cites this court's decision in *Mason v. Federal Express*

---

[30] *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971 (9th Cir. 2006).
[31] *Id.* at 972.
[32] *Id.* (internal quotation marks omitted).
[33] *Id.* at 968.
[34] *Id.*
[35] *Id.*

*Corporation*.[36] In *Mason*, this court concluded that the plan administrator was operating under a conflict of interest even though a structural conflict was not present. It gave credence to the argument that the claims administrator had financial incentives to provide favorable financial results for the company funding the ERISA plan based on specific factual and procedural irregularities related to the administrator's review of the claimant's medical record—including the administrator's attempt to influence a medical determination regarding whether the claimant was disabled.[37]

      There are no equivalent irregularities or potential conflicts in the record here. Plaintiff points to two denials by Regence to show that its decision making was irregular here. A couple of months after his stroke, Regence denied Plaintiff's pre-authorization request for a neurorehabilitative program offered through Rehab Without Walls, a home health care service.[38] Coverage for Rehab Without Walls depended on the Plan's separate home health care provision, not the neurodevelopmental therapy provision. Indeed, the program offered through Rehab Without Walls was described as a home neurorehabilitative program, not a neurodevelopmental program.[39] Regence denied the preauthorization request because it concluded that Rehab Without Walls provided and charged for premium

---

[36] 165 F. Supp. 3d 832 (D. Alaska 2016).

[37] *Id.* at 850-56.

[38] A.R. 517-19.

[39] A.R. 511.

12

home health services that were not medically necessary.[40] This specific denial itself is not at issue in this case[41] and the denial does not otherwise cast doubt on Regence's interpretation of the neurodevelopmental therapy provision. It does not suggest a concerning irregularity or inconsistency in the record, a failure to investigate, or the presence of bias or self-dealing.

The same is true of Regence's 2018 denial of Plaintiff's pre-authorization request for a long-term stay at Quality Living in Omaha, Nebraska, which is a skilled nursing facility providing rehabilitation services. Coverage for this stay had to meet the requirements under the Plan's skilled nursing facility provision, although Plaintiff, through his mother, asserted it could be covered under the neurodevelopmental therapy provision. Regence denied the request as not medically necessary, but Plaintiff appealed that decision, and as a result of that appeal, Regence approved a limited 10-day stay under the Plan's skilled nursing facility provision. Plaintiff now argues that the 10-day stay was far less than what was authorized under any of the various therapy provisions; but whether a longer stay should have been authorized under the skilled nursing facility provision is not at issue in this case. Rather, the complaint alleges that this stay should have been authorized pursuant to his neurodevelopmental therapy benefits, which Regence reasonably determined

---

[40] A.R. 517.

[41] There was no appeal filed to challenge Regence's determination that the offered home health services of Rehab Without Walls was medically necessary, and the complaint in this case does not address this issue specifically.

were not available to Plaintiff. The facility did not propose treatment that could be coded as neurodevelopmental therapy. Indeed, the record shows that the Quality Living representative told Regence that the facility was not providing developmental therapy services and that it was her understanding that stroke victims were not coded as having developmental conditions.[42] Again, nothing about Regence's limited authorization suggests the presence of bias or self-dealing, a failure to review the claim, or some other inconsistency.[43]

Plaintiff argues that procedural errors and misleading communications by Regence as to his neurodevelopmental therapy benefits weigh heavily against Regence in the abuse of discretion analysis. He relies on a letter his mother received on August 31, 2017 from Regence.[44] That letter was in response to her July 26, 2017 letter to Regence, in which she challenges Regence's failure to inform her about the Plan's neurodevelopmental therapy benefits.[45] Her letter is premised on her belief that Plaintiff was in fact eligible for such benefits; she complains in the letter that if Regence would have informed her about the availability of these benefits Plaintiff would have been able to remain in the hospital longer, and she asserts that the Plan's neurodevelopmental benefits should have covered more of his rehabilitation.

---

[42] Doc. 111-2 at pp. 12-14.

[43] Indeed, Regence points to evidence that the 10-day stay could be extended depending on whether his providers at Quality Living could show that Plaintiff had made progress at the facility during his stay. A.R. 1184-85.

[44] A.R. 1363-1364.

[45] A.R. 1356-57.

Regence's response letter states that the Plan does in fact provide for neurodevelopmental therapy benefits but that "[b]enefits are applied to services on claims submitted to Regence based on the diagnosis codes listed on the claims by the performing providers."[46] Regence goes on to explain that Plaintiff's care providers had not submitted any claims with the necessary neurodevelopmental diagnosis code and therefore he was not eligible for reimbursement under that provision.[47] While the letter does not explain why Plaintiff's injuries do not fall within the confines of the neurodevelopmental therapy provision, it places the onus on Plaintiff to discuss the diagnosis with his providers. The letter is not egregiously misleading, nor does it guarantee coverage under the neurodevelopmental therapy provision. In it, Regence clearly rejects Plaintiff's request for reimbursement and explains that Plaintiff will not be able to receive such benefits unless Regence receives a claim from his treating providers that is coded as neurodevelopmental. The denial is consistent with its own internal communications.[48]

Plaintiff also argues that Regence failed to respond to his attorney's letter dated January 25, 2019.[49] Like this lawsuit, the letter is premised on the assumption that Plaintiff had been entitled to neurodevelopmental benefits and therefore more of his therapy should have been covered under the Plan. It also specifically challenges

---

[46] A.R. 1363.

[47] A.R. 1364.

[48] A.R. 1359-62.

[49] A.R. 3367-71.

15

Regence's denial for pre-authorization to stay at Quality Living. Regence argues that it did discuss the letter with Plaintiff's attorney and was told that it was not an appeal of any specific decision but rather was a legal complaint.[50] The letter was routed to Regence's legal department.[51] Plaintiff disputes the veracity of Regence's account and maintains that Regence did not properly follow up on this appeal letter.[52] The court need not decide the issue, because even if Regence failed to properly process the letter as an appeal, any such irregularity does not warrant a finding that Regence abused its discretion in handling Plaintiff's continued demands for neurodevelopmental therapy benefits. There was an open line of communication between Regence and Plaintiff, and Regence told Plaintiff that none of his providers coded the services rendered to him as neurodevelopmental to warrant the application of those Plan benefits.

In his reply, Plaintiff provides the transcripts of phone calls between his mother and a Regence representative in late 2018 as evidence that Regence admitted that he should have received neurodevelopmental therapy benefits or at least egregiously misled him as to Regence's position. Indeed, in the first conversation it appears that the representative did not understand the neurodevelopmental therapy

---

[50] Doc. 105 at pp. 9-10; Doc. 106.

[51] Doc. 105 at p. 10; Doc. 106. Regence filed a motion to supplement the administrative record with an internal email that included task notes related to these discussions. Plaintiff did not file an objection to the motion itself, but he objects to the relevancy and veracity of these notes in his reply brief.

[52] Doc. 111 at p. 20.

benefit or what could trigger eligibility for the benefit.  She was clearly confused as to how the neurodevelopmental therapy benefit differed from the rehabilitative services benefit.[53]  She made many, what appear to be, incorrect or misleading statements.  However, a review of these conversations indicate this representative nonetheless made clear that the benefits Regence provides under the Plan depends on what the health care provider codes for treatment.[54]  She told Plaintiff's mother she would call the provider at issue, which was Quality Living, and discuss her understanding of the benefit.[55]  The Regence representative then placed a call to Quality Living and that facility's representative informed her that it does not bill treatment as developmental because, while there is no age restriction on who can obtain developmental therapy, such treatment does not apply to people requiring rehabilitation due to a stroke.[56]  After that discussion, on December 5, 2018, Regence's representative told Plaintiff's mother that she had researched the issue further and that a stroke is not considered neurodevelopmental under the applicable list of diagnosis codes.[57]  She stated that neurodevelopmental therapy occurs when a patient needs to regain a function that he never had.[58]

---

[53] *See, e.g,* doc. 111-1 at pp. 14-15.

[54] *Id.* at pp. 5, 22.

[55] *Id.* at pp. 15, 19.

[56] Doc. 111-2 at pp. 12, 14.

[57] Doc. 111-3 at pp. 2-3.

[58] *Id.*

17

These various discussions show that Regence was in fact working with Plaintiff and engaging in a good faith effort to understand the full possibility of his benefits and to be responsive to his continued demand for coverage under the Plan's neurodevelopmental therapy benefit. Consequently, despite any procedural errors or miscommunications that may have occurred, there is nothing in the record casting doubt on whether Regence's interpretation should be accorded deference.

## V. CONCLUSION

Based on the preceding discussion, Regence's motion for partial summary judgment at docket 77 is GRANTED. Plaintiff's cross motion for summary judgment at docket 101 is DENIED. Plaintiff's claims for denial of benefits and equitable surcharge are hereby dismissed.

IT IS SO ORDERED this 19th day of April, 2021, at Anchorage, Alaska.

*/s/ John W. Sedwick*
JOHN W. SEDWICK
Senior United States District Judge

18

Case 3:19-cv-00169-JWS   Document 120   Filed 04/19/21   Page 18 of 18