Brewster H. Jamieson, ABA No. 8411122
Hans N. Huggler, ABA No. 1505025
LANE POWELL LLC
1600 A Street, Suite 304
Anchorage, Alaska 99501
Telephone: 907-264-3325
　　　　　　 907-264-3318
Email:　　 jamiesonb@lanepowell.com
　　　　　　 hugglerh@lanepowell.com
Attorneys for Defendants Coffman Engineers, Inc.
and Coffman Engineers, Inc. Welfare Plan

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PETER HEWKO,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>COFFMAN ENGINEERS, INC.;<br>COFFMAN ENGINEERS, INC.<br>WELFARE PLAN; REGENCE<br>BLUESHIELD;<br><br>　　　　　　　　　　Defendants. | Case No. 3:19-cv-00169-JWS<br><br>**COFFMAN DEFENDANTS'**<br>**OPPOSITION TO PLAINTIFF'S**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT** |

Defendants Coffman Engineers, Inc. and Coffman Engineers, Inc. Welfare Plan, through counsel, submit their Opposition to Plaintiff's Motion for Summary Judgment as follows:

## I. INTRODUCTION

On February 28, 2020 plaintiff filed his "Corrected" Second Amended Complaint. He alleged:

> Peter Hewko, and his parents on his behalf, requested plan information and documents from Regence Blue Cross and its agents and Coffman Engineers, Inc. which were not provided to them within 30 days of the requests. The failure to provide Plan information and documents greatly prejudiced Peter Hewko and his parents' efforts, on his behalf, to obtain benefits to which

Peter was entitled to under the terms of the Coffman Engineers, Inc. Welfare Plan.

(ECF No. 57-7 at ¶¶ 30-31 (emphasis added).) None of those allegations were true—there had been no written requests and no failures to respond.

Now plaintiff seeks $21,780 in penalties on an ERISA "plan document" claim under an entirely different set of facts. Under ERISA the Court may impose a discretionary penalty not to exceed $110 per day for a plan administrator's failure to timely respond to written requests for plan documents. *See* 29 U.S.C. 1024(b), 1132(c)(1). Plaintiff tries to shoehorn his informal litigation discovery requests into this framework. The Court should reject that effort. Plaintiff's informal discovery requests occurred *after* filing his claim and the Court lacks subject matter jurisdiction under Article III or for failure to exhaust administrative remedies. Further, plaintiff's lawyer-to-lawyer informal email requests are not enforceable plan document requests made on Coffman as plan administrator. And even if plaintiff has a cognizable claim this Court may hear, it should exercise its discretion and decline to impose any penalty here. For these reasons the Court should deny the motion and enter final judgment for Defendants.

## II. BACKGROUND

Defendants do not dispute the basic timeline of events plaintiff presents in his exhibits. However, they do not tell the full story.

First, Coffman ensured plaintiff had a copy of relevant policies and information on benefits available to him soon after his 2016 stroke. Coffman sent plaintiff a memo dated July 14, 2016, which included information on his short and long-term disability benefits and enclosed the most recent "Regence Medical booklet" (the 2016 SPD). (*See* Declaration of Timber Chinn.) He also received a copy of his 2018 SPD by Regence on November 20, 2018, in response to what appears to have been a phone request to it. (AR 3284-3363.) At all relevant times Hewko had the substantive Plan terms needed to understand his coverage. The subject of this motion are documents used to prove the plan structure necessary to support "abuse of discretion" review in litigation.

Second, plaintiff did not promptly receive every document he sought in response to his informal discovery request because those requests were ambiguous and were not made in a vacuum. When plaintiff made his informal request the COVID-19 pandemic was in early, rapid growth and affecting the courts, businesses, law firms, and families. Plaintiff could have, but did not, serve discovery requests with set deadlines for responses to obtain the documents he sought. He could have, but did not, address a written request to Coffman as plan administrator, triggering ERISA administrative procedures. At the least, he could have followed up to confirm the status of his informal request. Plaintiff did none of those things, but now seeks tens of thousands of dollars in penalties because his informal approach did not lead to the strict compliance he demands. The facts and circumstances do not warrant imposition of a discretionary penalty and cannot justify plaintiff's extraordinary demand for more than $21,780. (*See* Declaration of Brewster H. Jamieson ("Jamieson Decl.").) His motion should be denied.

### III. **LEGAL STANDARD**

Among its procedural requirements, ERISA provides participants with a right to obtain copies of their plan's "latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b). They must do so by written request to the plan's administrator. *Id.* The plan administrator (here, Coffman Engineers) is the only entity with a legal obligation to respond to that request or with potential liability for failing to do so. *Moran v. Aetna Life Ins. Co.,* 872 F.2d 296, 298-300 (9th Cir. 1989).

An administrator who fails to mail requested documents to a participant's last known physical address within 30 days "may in the court's discretion be personally liable" to the requesting participant for statutory penalties of "up to" $110. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c–1 (increasing the maximum statutory penalty from $100 per day to $110 per day for violations occurring after July 29, 1997). "Whether to impose statutory penalties and the amount of those penalties . . . is discretionary."

*Hemphill v. Estate of Ryskamp*, 619 F.Supp.2d 954, 975 (E.D. Cal. 2008). "Appropriate factors to be considered . . . include [1] bad faith or intentional misconduct on the part of the administrator, [2] the length of the delay, [3] the number of requests made and documents withheld, and [4] the existence of any prejudice to the participant or beneficiary." *Id*. at 976 (citations omitted).

## IV. ARGUMENT

### A. The Court Lacks Jurisdiction Over the 1132(c) Claim for Lack of Ripeness or Failure to Exhaust Administrative Remedies.

Plaintiff's claim is flawed from inception—assuming he made a statutorily-enforceable written request (he did not), that request was made *after* he alleged past facts supporting it. Plaintiff's pleaded claim did not exist when he pleaded it, and as a result, the Court lacks subject matter jurisdiction under Article III and the "exhaustion of administrative remedies" requirement for ERISA claims.

On February 28, 2020, Plaintiff moved to substitute the Second Amended Complaint with a "Corrected Second Amended Complaint," asserting that prior counsel was not ERISA-experienced and a "corrected" complaint was appropriate. (ECF No. 56 at 4-5.) Plaintiff submitted the Corrected Second Amended Complaint as Exhibit 7 to that motion. In it plaintiff alleged that "Peter Hewko, and his parents on his behalf, requested plan information and documents from Regence Blue Cross and its agents and Coffman Engineers, Inc. which were not provided to them within 30 days of the requests." (ECF No. 56-7 ¶ 30.) Plaintiff alleged "[t]he failure to provide Plan information and documents greatly prejudiced Peter Hewko and his parents' efforts, on his behalf, to obtain benefits to which Peter was entitled to under the terms of the Coffman Engineers, Inc. Welfare Plan." (*Id.* at ¶ 31 (emphasis added). None of this was true—Hewko had made no written requests for plan documents to Coffman (or Regence).

Hewko now seeks relief on a purportedly enforceable request made by informal email to Coffman and Regence's counsel on March 3, 2020, four days after filing his Corrected Second Amended Complaint. The Court approved substitution of the new

complaint on March 16, 2020, two weeks before Coffman was purportedly required to respond—plaintiff's allegations were not truthful when they became operative. It appears plaintiff's new ERISA counsel included an 1132(c) claim in the Corrected Second Amended Complaint without confirming qualifying requests were made. The Court should not countenance that tactic, nor allow plaintiff to use his improper pleading as a vehicle for post-hoc penalties claims.

The federal judicial power extends only to "cases" or "controversies." U.S. Const. art. III, § 2. Hornbook law requires claims be "concrete and particularized" as well as "definite" to fall within the Article III power. *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care,* 968 F.3d 738, 747 (9th Cir. 2020). Section 1132(c)(1) provides a cause of action against a plan administrator that "fails to . . . furnish" documents "within 30 days after" an enforceable request. This is the equivalent of a "mandatory waiting period" that must pass before a cause of action exists and must be strictly construed. *See Hallstrom v. Tillamook Cnty*, 493 U.S. 20, 31 (1989). Even measuring from the March 16, 2020 operative date of the Corrected Complaint, plaintiff has no cause of action for requests made on March 3, 2020 and the Court lacks jurisdiction as a result. Looked at another way, plaintiff failed to exhaust his administrative remedies by prematurely suing, likewise requiring dismissal. *See Diaz v. United Agr. Employee Welfare Ben. Plan and Trust*, 50 F.3d 1478, 1483-84 (1995) (applying exhaustion requirements to enforcement of statutory as well as plan rights).

The facts match those in *First Atlantic Leasing Corp. v. Tracey*, where the District of New Jersey dismissed an 1132(c) claim for those same reasons. There, a claimant filed his 1132(c) claim and his attorney then served a "Notice to Produce" that included requests for plan documents, to which his employer allegedly failed to adequately respond. The *First Atlantic* court summarized plaintiff's argument as "Tracey claims that, although he did not have facts sufficient to support his claim when he filed his third-party complaint, he developed such facts after the third-party complaint was filed, and therefore, he is entitled to proceed with this action." 738 F. Supp. 863, 875 (D. N.J. 1990). The court

roundly rejected that approach:

> I reject Tracey's position. Pursuant to the statute at hand, Tracey is required to make a request to the administrator of the plan and wait thirty days before he can commence suit. The exhaustion requirement has generally been applied in cases involving an alleged denial of benefits, and I believe that a party should not be permitted to commence suit before his cause of action has even accrued. Further, it appears that this Court lacked jurisdiction over Tracey's Section 104 claim at the time the suit was filed, because the suit was filed prematurely and thus, there was no "ripe" case or controversy.

*Id.* at 875-76; *see Aquilio v. Police Benev. Ass'n of N.Y. State Troopers, Inc.*, 857 F. Supp. 190, 213 (N.D.N.Y. 1994) (following *First Atlantic* and holding the same).

Plaintiff brought his claim before even (purportedly) making the only request for documents he contends is enforceable. Like in *Tracey,* he made his allegations first and now seeks relief on facts developed afterward. Whether for constitutional ripeness, failure to exhaust, or pursuant to this Court's authority to remedy violations of its pleading rules, these facts require dismissal with prejudice.

**B.     Plaintiff's Claim Fails Because He Did Not Make an Enforceable Request to the Plan Administrator.**

Even if the Court could hear plaintiff's claim, the facts do not support relief under ERISA because plaintiff's informal lawyer-to-lawyer discovery request is unenforceable. Plaintiff seeks to enforce administrative rights provided by 29 U.S.C. § 1024(b), which states:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

Here "administrator" specifically means the statutory plan administrator, Coffman Engineers, Inc., and to the extent plaintiff's claim is asserted against the Plan or Regence it fails as a matter of law. *Moran,* 872 F.2d at 298-300.

Congress intended § 1024(b) to facilitate administrative communications between participants and benefit plans as to the terms and operation of their plan, giving it teeth

with § 1132(c)'s prompt enforcement mechanism if an administrator was not responsive. Section 1024(b) applies to "participants" and "beneficiaries" and relates to the "latest" Plan documents. "Participants" are "any employee or former employee . . . who is or may become eligible to receive a benefit of any type" under their plan. 29 U.S.C. § 1002(7). A quick, comprehensive response to a request for plan documents furthers ERISA's goals by ensuring participants receive timely information on their benefits. But that was not the situation plaintiff was in on March 3, 2020. He was not eligible for Plan medical benefits after February 2019. (AR 330 (documenting expiration of COBRA extension of medical benefits).) Having filed suit ten months prior, plaintiff was a litigant seeking judicial relief and subject to the relevant procedural rules.

Federal courts reject attempts to graft ERISA enforcement penalties onto litigation discovery exchanges. The Seventh Circuit contrasted the administrative and litigation contexts in *Verkuilen v. S. Shore Bldg. and Mortg. Co.,* 122 F.3d 410, 411-12 (7th Cir. 1997), recognizing that an ERISA document request is a "participant-to-administrator" device rather than a "lawyer-to-lawyer" mechanism. Considering a claim for ERISA penalties for a plan administrator's failure to treat formal discovery requests as ERISA administrative requests, it explained:

> Instead of forcing the defendant to guess whether to use the approach of ERISA or the Federal Rules of Civil Procedure in response to litigation documents, participants should do what ERISA contemplates: send a simple written request to the plan administrator. If 30 days pass and the administrator does not reply, suit may be filed to collect the statutory penalty (although one hopes that the parties will first attempt to work out their differences). If litigation is in progress—a claim to recover unpaid benefits, for example—the participant still may send a written request, and if the plan administrator balks the participant may amend the complaint to add a penalty claim. The procedure for requesting information is so simple, and the statutory rules for response so explicit, that we have insisted on strict compliance by both participant and administrator. Nothing but confusion could come from treating complaints and interrogatories as ERISA demands, and replacing Rules 11 and 37 with the penalty provisions of § 1132(c).

*Id.* (internal citations omitted). Numerous courts have likewise held that requests for

documents "made during the course of litigation are not written requests to a plan administrator for ERISA purposes." *Hayden v. Blue Cross and Blue Shield of Texas, Hayden v. Blue Cross & Blue Shield of Texas,* No. 1:10-CV-50, 2012 WL 13020820, at *9 (D.N.D. Oct. 23, 2012) (noting that the requests "did not predate the complaint and could not have been contemplated" and were "directed to counsel, not the Plan Administrator"); *see Hughes v. National Resource Consultants*, 77 Fed. App'x 973, 974 (9th Cir. 2003) ("requests for plan documents made pursuant to the Rules of Civil Procedure in the course of pre-trial discovery do not trigger the application of § 1132(c)").

Although not formally styled, Hewko's informal email request for documents sent to litigation counsel was an informal discovery request that falls outside the parameters of § 1132(c)." New counsel appeared for Hewko on February 27, 2020, and filed a complaint containing ERISA claims. (ECF No. 56.) On March 3, 2020, plaintiff's counsel sent an ambiguous email request for "the 'actual' health benefits 'plan', plus the SPD" to Coffman's litigation counsel. (ECF No. 122-1.) On April 2, 2020, Hewko's counsel first asserted his request was enforceable by statutory penalties, and the following day Coffman's counsel provided a set of SPDs which contained all of the substantive coverage terms at issue in this case (and which Hewko already had). (ECF No. 122-4.) Hewko's counsel then identified agreements between the Plan and Regence as administrator and the "formal plan" as necessary documents, the first time such documents were described with any specificity. (ECF No. 122-5; 122-6.) Plaintiff's counsel did not follow up. Rather, plaintiff waited a few months, then filed a motion seeking to "supplement" the administrative record by conducting discovery into additional medical records and to conduct depositions. Included in that motion was a one-paragraph request that the Court order the production of additional plan documents but made no mention of 1132(c) or his prior requests. (ECF No. 76 at 8-9.) Defendants (through Regence) subsequently produced the "wrap document" and ASC in their response filed October 16, 2020. (ECF No. 79 at 15-16.)

Section 1132(c) is a penalties provision and must be construed strictly. *Serpa v.*

*SBC Telecomm., Inc.,* No. C03-4223 MHP, 2004 WL 3204008, at *3 (N.D. Cal. Dec. 8, 2004) (collecting cases).  And "a written request must provide the plan administrator with 'clear notice of what information the beneficiary desires.'" *Id.*  Plaintiff did not act as a Plan participant would by making an enforceable request to the Plan administrator.  He did not direct his request to the plan administrator at the address identified for that purpose in each SPD.  (AR 3547, 3627, 3705; *see* ECF No. 56-1 (plaintiff's pre-request exhibit showing Coffman's administrative contact information).)  He did not send litigation counsel a letter addressed to the plan administrator.  Instead, he acted as a plaintiff, requesting a bevy of documents from both Coffman and Regence's litigation counsel for use in active litigation assuming they would understand the request as a formal one to Coffman's as administrator, then left the matter pending for months.  Counsel are not converted into plan administrators by dint of their representation of ERISA plans.  If plaintiff wanted to make an enforceable request, he could have proceeded under ERISA or the Federal Rules of Civil Procedure.  Instead, he relied on informal discovery to obtain the information he wanted.  By doing so plaintiff forfeited the right to the enforcement mechanisms available under ERISA or the Rules and has no claim here.

Because the facts and circumstances show plaintiff's request to litigation counsel was in the mode of a discovery request rather than an administrative request, he has not met his burden under 1132(c) and the motion should be denied.

C. **If the Court Determines Hewko Made an Enforceable Request, the Court Should Decline to Impose a Penalty Under the Relevant Factors.**

Coffman did not violate § 1132(c)(1) and no penalty is warranted.  But even if the Court concludes the facts could permit a penalty here, "[w]hether to impose statutory penalties and the amount of those penalties . . . is discretionary." *Hemphill,* 619 F.Supp.2d at 975.  "Appropriate factors to be considered . . . include [1] bad faith or intentional misconduct on the part of the administrator, [2] the length of the delay, [3] the number of requests made and documents withheld, and [4] the existence of any prejudice to the participant or beneficiary." *Id.* at 976 (citations omitted).  Here, there was no bad faith or

intentional misconduct by Coffman, the delay in producing the documents was not excessive, plaintiff made only a single request for the wrap document and ASC, and plaintiff admits he was not prejudiced.

First, the explanation for Coffman's delay is quotidian and does not demonstrate bad faith or intentional misconduct. Plaintiff's April 3, 2020 follow-ups in response to Coffman's provision of the SPDs arrived just as governments, courts, law firms, and their clients were reeling from the new and rapid spread of COVID-19. In that environment and without any follow-up by plaintiff's counsel, his informal request went unresolved. (*See* Jamieson Decl.) Once plaintiff's motion was filed, Coffman requested Regence include the documents in its opposition so the Court was fully apprised of their existence and contents. There was no bad faith or intentional misconduct by Coffman, and imposing a penalty for counsel's acts will not further ERISA's goals. *Glavor v. Shearson Lehman Hutton, Inc.,* 879 F. Supp. 1028, 1034 (N.D. Cal. 1994) (noting 1132(c) was intended to "induce compliance by plan administrators" (citation omitted)). This factor weighs against Plaintiff's demand for penalties.

Second, plaintiff asserts a delay from April 3, 2020 to October 16, 2020. A delay of six months in the context of pre-trial conferrals is not an extreme case and the issue did not delay dispositive proceedings. This factor is neutral.

Third, plaintiff's requests were minimal. He requested a broad set of documents from Regence and Coffman's counsel. (ECF No. 121-1.) In response to SPDs sent to him on April 3, 2020, plaintiff's counsel asked "is there a formal Plan" and "[n]ormally there is some kind of agreement between the employer and the claims company that sets up the agreement between them." (ECF Nos. 121-4; 121-5.) Coffman's counsel responded that he would follow up with his client. (ECF No. 121-4.) Plaintiff was content to let the issue rest until his October motion. Contrary to plaintiff's assertions, that conduct does not show "intentional refusal to provide the requested documents." (ECF No. 121 at 10.) There are no exchanges in the record in which Coffman rebuffed requests, denied the existence of documents, or otherwise engaged in affirmative conduct to deprive plaintiff of this

information, and plaintiff's lack of follow-up does not suggest urgency on his part. This factor is neutral.

Finally, plaintiff admits there is no prejudice here, asserting it is "not a prerequisite" to the assessment of a civil penalty. (ECF No. 121 at 7.) That may be so, but prejudice is an important factor in the Court's discretionary analysis. Here, plaintiff had Coffman's SPDs long before requesting documents from Coffman's counsel. Those documents contained the substantive coverage terms at issue and notified him of the discretionary standard applicable in litigation. The documents produced were consistent with the SPDs' contents. Plaintiff was engaged in other discovery disputes when he received the subject documents, and there is no indication the period he lacked the documents at issue translated to any actual disadvantage or delay in the resolution of the case. This factor weighs against plaintiff's demand for penalties.

If the Court holds Coffman's actions violated ERISA, the above analysis demonstrates it should exercise its discretion and decline to impose a penalty here. If the Court considers any penalty, the $21,780 claimed by plaintiff is plainly excessive. ERISA allows the Court to impose a penalty in its discretion "up to" $110 per day, and circuit courts routinely uphold limited penalties in cases without prejudice. *See Moothart v. Bell,* 21 F.3d 1499, 1506 (10th Cir.1994) (finding that district court did not abuse its discretion in imposing a penalty of $30 per day where there was little prejudice to plaintiff); *Daniel v. Eaton Corp.,* 839 F.2d 263, 268 (6th Cir.) (upholding statutory penalty of $25 per day for 278 days), *cert. denied,* 488 U.S. 826 (1988); *Sedlack v. Braswell Svcs. Grp., Inc.,* 134 F.3d 219, 226-27 (4th Cir. 1998) ($20 per day for 531 days); *McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund,* 320 F.3d 151, 163 (2d Cir. 2003) ($15 per day for 417 days); *Fama v. Design Assistance Corp.,* 520 F. App'x 119, 124 (3d Cir. 2013) ($10 per day for 293 days); *McCollum v. Life Ins. Co. of N. Am.,* 495 F. App'x 694, 707 (6th Cir. 2012) ($5 per day "nominal penalty" for 317 days). Here, if the Court holds some penalty is warranted, it should likewise impose only a nominal penalty.

## V. CONCLUSION

Amid an unprecedented period of disruption, Coffman failed to provide all the informal discovery plaintiff requested as quickly as he wanted it. For the reasons above, that failure is not actionable, plaintiff's motion should be denied, and final judgment entered for Defendants.

DATED this 7th day of June, 2021.

LANE POWELL LLC
Attorneys for Defendants Coffman
Engineers, Inc. and Coffman Engineers, Inc.
Welfare Plan

By  s/ Brewster H. Jamieson
   Brewster H. Jamieson, ABA No. 8411122
   Hans N. Huggler, ABA No. 1505025

I certify that on June 7, 2021, a copy of the foregoing was served electronically on:

Michael W. Flanigan
mflanigan@farnorthlaw.com

James E. Torgerson
jim.torgerson@stoel.com

Connor R. Smith
connor.smith@stoel.com

s/ Brewster H. Jamieson